BRICE *v.* STATE OF MARYLAND

[No. 345, September Term, 1968.]

*Decided July 10, 1969.*

The cause was heard before HAMMOND, C. J., and MARBURY, BARNES, FINAN and SMITH, JJ.

*Joseph H. Thomas, Jr.* for appellant.

*Thomas M. Downs, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Charles E. Moylan, Jr., State's Attorney for Baltimore City,* and *John Henry Lewin, Jr., Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

FINAN, J., delivered the opinion of the Court.

The appellant, Willie Frank Brice, was charged in four separate indictments with robbery with a deadly weapon (No. 2204), perverted practice (No. 2205), rape (No. 2206), and murder (No. 2207). He was arraigned on June 20, 1967, before Judge Thomas J. Kenney of the Criminal Court of Baltimore at which time the following written "pleas" were entered on his behalf:

1. That he is not guilty by reason of insanity at the time of the commission of the crimes alleged.
2. That he is not guilty by reason of insanity at the present time.
3. That he pleads double jeopardy.[1]

On June 21, 1967, appellant entered "additional pleas" as follows:

1. That Indictments Nos. 2204, 2205, 2206, 2207 were returned by the grand jury without admissible, credible or direct evidence having first been heard and presented to the grand jury.
2. The suppression of any and all written statements and oral statements attributed to him concerning alleged facts leading to the return by the grand jury of the four (4) indictments with respect to such statements being put at the disposal of the Clifton T. Perkins Hospital or any other hospital in determination of defendant's sanity.

On July 11, 1967, Judge Kenney filed a memorandum in answer to appellant's pleas and motions. The motion to suppress the written and oral statements attributed to the appellant with reference to providing those state-

---

1. Appellant had been previously tried and convicted of the same charges but that conviction was reversed as a result of Schowgurow v. State, 240 Md. 121, 213 A. 2d 475 (1965).

ments to Clifton T. Perkins State Hospital as an aid in their psychiatric evaluation was denied. However, this was without prejudice to the right of the appellant to raise the issue later in the proceedings after he had been declared competent to stand trial and would be able to assist in his defense, since in all probability his testimony would be required at the hearing on such a motion.

The double jeopardy plea of June 20, 1967, and plea No. 1 of June 21, 1967, were treated by Judge Kenney in the following manner:

> "In addition, the Defendant raises the question of double jeopardy, which the Court will consider as a motion to dismiss the indictments on those grounds.

> "In the pleading denominated 'Additional Pleas', the Defendant also complains, 'That indictments numbered 2204, 2205, 2206, 2207 were returned by the Grand Jury without admissible, credible or direct evidence having first been heard and presented to the Grand Jury.' This, too, the Court will treat as a motion to dismiss the indictments.

> "Section 8 of Article 59, as amended at the 1967 Session of the Legislature, provides in part, 'The fact that the defendant is found not competent to stand trial does not preclude his counsel if he elects to do so from making any legal objection to the prosecution which is susceptible of fair determination prior to trial and without the personal participation of the defendant. The Court believes that the question of double jeopardy and the objection to the indictments based on the alleged type of evidence submitted to the Grand Jury are susceptible of fair determination before trial without the participation of the Defendant. *The Court then directs the State to file an answer to said motions and attempt to enter into an agreed statement of the*

*pertinent facts with counsel for the Defendant.
If such a statement can be agreed upon, it should
be filed with the Court together with legal
memoranda in support of their respective posi-
tions by opposing counsel. If counsel cannot
agree on the facts, they are requested to advise
the Court promptly, and the matter will be set
down for hearing and argument."* (Emphasis
supplied.)

On the same day as the memorandum, Judge Kenney
caused an order to be signed transferring the appellant
to the custody of the superintendent of the Clifton T.
Perkins State Hospital for examination and evaluation
as to the appellant's sanity and competency. On Novem-
ber 8, 1967, appellant filed a motion in proper person to
strike the appearance of counsel and on December 27,
1967, new counsel was appointed by the court for the de-
fendant. The case finally came on for trial on October
21, 1968, before a jury, in the Criminal Court of Balti-
more, Judge Solomon Liss presiding. At the close of the
State's case the appellant refused to testify in his own
behalf and he took the stand for the limited purpose of
stating the reason for his refusal. The following col-
loquy took place between the appellant, his attorney Mr.
Maxwell, and the trial court:

"MR. MAXWELL: Now, your Honor, I am
placing the defendant on the stand for the lim-
ited purpose only of the defendant giving his
explanation as to why he does not want to tes-
tify.

"I have explained to the defendant that, nat-
urally, he does have a right to testify in this
matter. By the same token, he has a right not to
testify, and the fact that he does not testify in
no way is a reflection upon his guilt or inno-
cence.

"You are aware of this, Mr. Brice, is that
correct?

THE WITNESS: Yes, that is correct.

BY MR. MAXWELL:

Q. As a matter of fact, Mr. Brice, as your counsel, your appointed counsel, it was my advice to you that you should testify, isn't this correct?

A. That is correct.

Q. However, you tell me that you do not wish to testify, is that right?

A. That is correct.

Q. Mr. Brice, you also stated that you wished to have in the record your reasons for not testifying. Would you please, for the record, again, tell Judge Liss why you choose not to testify?

A. *Well, Judge, the reason that I refuse to testify in my own defense is on certain grounds or motion that I have before the Court that was denied before Judge Kenney. It is my belief that I was denied due process of law. I'm assuming that I was indicted unlegal, because the main witness, Mrs. Dicie Mae Richmond, didn't appear before the Grand Jury, and I was denied a preliminary hearing. And, it is my belief that under the new Grand Jury, that the main prosecutor witness should appear before the Grand Jury before the indictment would be returned. I was denied that motion before Judge Kenney.* (Emphasis supplied.)

MR. MAXWELL: Now, your Honor, again, for the record, I have explained to Mr. Brice the fact that even if he testifies as I have recommended that he do testify, he, in no way, waives this objection. It is still part of the record in so far as the fact that Mrs. Richmond did not appear before the Grand Jury, or allegedly did not appear before the Grand Jury.

"However, Mr. Brice, you still insist that you do not wish to testify, is that correct?

THE WITNESS: *It is my belief that concerning the trial, that I am being tried on a false indictment. For that reason, I refuse to incriminate myself on some indictment I feel that is unlegal. It is my belief.* (Emphasis supplied.)

THE COURT: All right. Well, then, Mr. Brice, let me make sure that you understand it, and, of course, the question of whether you testify or not is a right that you have to determine—

THE WITNESS: Yes, sir.

THE COURT: —for yourself.

THE WITNESS: Yes, sir.

THE COURT: *You have made a motion before Judge Kenney, in which you raise certain legal objections to the indictment.* (Emphasis supplied.)

THE WITNESS: Yes.

THE COURT: *Those objections have been overruled by Judge Kenney.* (Emphasis supplied.)

THE WITNESS: *Correct.* (Emphasis supplied.) [Unfortunately, the witness was wrong, the motion had not been ruled upon by Judge Kenney.]

The appellant was found guilty on all of the counts of the indictments and judgment on the jury verdict was rendered on October 29, 1968. Appellant was sentenced to two ten (10) year prison terms for robbery with a deadly weapon and perverted practice to run consecutively with the murder and rape convictions for which appellant was sentenced to die in the gas chamber. From those convictions and sentences appellant filed this appeal. Appellant alleged several errors in the court below but we need only address ourselves to one of them.

It is the appellant's contention that the transcript of the trial below and the docket entries as to each indictment do not reveal a ruling by the lower court on the ap-

pellant's motions as to double jeopardy and the lack of admissible, credible, or direct evidence before the grand jury and that such rulings, if favorable to the appellant, would have resulted in the dismissal of the indictments against him. Therefore, he argues, such failure to rule on his motions was prejudicial to him, that he never waived his right to have said motions ruled upon and the lower court's failure to rule upon his motions requires the judgment of the trial court to be reversed and a new trial to be granted.

It is the position of the appellee that the appellant had a duty to request a hearing on the motions in question and that his failure to do so constitutes a waiver of the alleged error and that the appellant is estopped from bringing it before this Court. Also, the appellee urges that the appellant failed to object in the lower court to the failure to rule on the motions in question and such failure is thus fatal to appellant. We do not think that the appellant failed to object nor do we believe that he was guilty of any action or failure to act amounting to a waiver.

Both adversaries cite in their favor the cases of *Banks v. State,* 203 Md. 488, 102 A. 2d 267 (1954), and *Davis v. State,* 189 Md. 269, 55 A. 2d 702 (1947), and both cite in support of their respective contentions the following excerpt from the Court's opinion in *Banks*:

> "There is also the rule that the Court of Appeals should in no case decide any point or question which does not plainly appear by the record to have been tried and decided by the court below. Rules of the Court of Appeals, rule 9. [Now Maryland Rule 885] This rule, adopted to ensure fairness for all parties in a case and to promote the orderly administration of the law, applies to both civil and criminal cases. So, when a party has the option either to object or not to object, as he sees fit, his failure to exercise the option while it is still within the power

of the trial court to correct the error, constitutes a waiver of the error estopping him from bringing it to the attention of the Court of Appeals." *Id.* at 495.

There is no dispute but that the above quotation from *Banks,* is a correct statement of the law, the question is the proper application of *Banks* to the case at bar.

The accused was in error when he stated in response to the question of the court that Judge Kenney had acted upon the motions to dismiss which the accused had filed in proper person. As a matter of fact, Judge Kenney had never ruled upon them; however, we are of the opinion that the sum total of the colloquy between the accused and the court, as it appears in the record, amounted to an unlettered man endeavoring, in his own way and to the best of his ability, to record his objections to the court's failure to dispose of the motions he had filed on his own behalf. We certainly do not see how his actions could be construed as a waiver, as contended by the State.

In *Davis, supra,* this Court stated:

"* * * [I]t is sufficient for all purposes for which an exception has heretofore been necessary that a party, at the time the ruling or order is made *or sought,* makes known to the court the action which he desires the court to take, or his objection to the action of the court and his grounds therefor. * * *." *Id.* at 273. (Emphasis supplied)

It may well be that the accused's motions are without merit, but we are not here deciding that question. The fact is that Judge Kenney, in his memorandum was of a mind that they should be resolved. He directed the State to file an answer to them and expressed the hope that counsel could get together on an agreed statement of facts and favor the court with a legal memorandum in support of their respective positions, and that in the event that this could not be done, counsel were to advise the

court so that the motions could be set down "for hearing and argument." The motions were never ruled upon.

In *Davis, supra,* this Court in discussing the necessity for an objection being made to a ruling by the lower court, accompanied with the request that the court rule upon it, where a party against whom the ruling is made seeks to preserve the question for appeal, stated:

> "* * * We specifically hold that where a defendant objects to the admission of evidence, and the Court, instead of making a definite ruling thereon, admits the evidence subject to exception, the record, to be sufficient for the basing of reversible error thereon, must show that the ruling was made or *sought before the close of the case. Courtney v. State,* 187 Md. 1, 48 A. 2d 430; *State v. Holley,* 136 S. C. 68, 134 S. E. 213. * * *." *Id.* at 274. (Emphasis supplied)

We think that, although the Court, in the quotation above cited from *Davis, supra,* was referring to the failure of the lower court to rule on an exception, where a ruling had been sought, that nonetheless, the situation is analogous to the instant case where the accused sought a ruling on his motions to dismiss, and never received such a ruling. It certainly cannot be seriously contended where a motion has been made and the moving party seeks to have a ruling on that motion and the court, through error or omission, does not give a ruling, that the subject matter of the motion has not been properly preserved on appeal, in the absence of a waiver or conduct amounting to a waiver.

We are here dealing with crimes of the most serious nature that man can commit upon which the death penalty has been rendered. We cannot overlook the serious consequences which this case presents to both the State and the accused.

It is regrettable that a more thorough check was not made by the State to ascertain whether or not Judge Kenney actually had ruled on the defendant's motions

(which motions may well have been completely frivolous), before the close of the case. If there had been such a check, this Court, in all probability, would not now be presented with a case which has taken such a bizarre turn. In its present posture, we see no alternative other than to reverse the judgments of the lower court and remand the case for a new trial.

> *Judgments reversed, case remanded for a new trial. Costs to be paid by the Mayor and City Council of Baltimore.*