976 A.2d 1072

**Cecil Laroy ROBINSON**

v.

**STATE of Maryland.**

**No. 109, Sept. Term, 2008.**

Court of Appeals of Maryland.

July 28, 2009.

94

Stacy W. McCormack, Asst. Public Defender of Baltimore, on brief, for appellant.

Jeremy M. McCoy, Asst. Atty. Gen. (Douglas F. Gansler, Atty. Gen., of Maryland, of Baltimore), on brief for appellee.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, MURPHY, ADKINS and BARBERA, JJ.

BARBERA, J.

Appellant, Cecil Robinson, was tried before a jury in the Circuit Court for Caroline County, on charges of attempted robbery and related offenses. At the outset of the trial, the court learned that members of Appellant's family might have been attempting to intimidate witnesses. After discussing the matter in the presence of counsel and Appellant, the court ordered the members of Appellant's family and at least two other persons to leave the courtroom. The jury ultimately found Appellant guilty of two counts of attempted robbery and other offenses. Sentencing followed in due course.

Appellant noted a timely appeal to the Court of Special Appeals, asking "[w]hether the trial judge violated the appellant's constitutional right to a public trial when she ordered members of the appellant's family and other spectators to leave the courtroom." In his brief before that court, Appellant contested the court's decision to order those persons out of the courtroom without first undertaking the analysis required by *Waller v. Georgia*, 467 U.S. 39, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984), and its Maryland progeny.

We granted a *writ of certiorari* before consideration by the Court of Special Appeals, to resolve the merits of the question Appellant presents on appeal. *Robinson v. State*, 406 Md. 443, 959 A.2d 793 (2008). We cannot reach the merits of the claim, however, because Appellant did not object to the court's order and thereby failed to preserve the claim for appellate review. Moreover, the state of the record precludes review, even were we to consider overlooking the failure to object. We therefore affirm the judgments of conviction.

## I. The Trial

The events precipitating this appeal arose during *voir dire* of the prospective jurors. One prospective juror responded to a *voir dire* question by advising the court that he could not decide the case impartially after overhearing a group of four or five persons discussing the case in the hallway. The prospective juror did not elaborate on what he had heard, but he observed that the persons he overheard discussing the case might have been witnesses at trial. The court dismissed the juror for cause, *voir dire* continued, and eventually a jury was selected and sworn.

At that time, the court directed the jury to retire to the jury room and ordered the potential witnesses sequestered. The court then addressed the spectators in the courtroom:

Now for those of you who are not potential witnesses, and I'm sort of primarily looking at Mr. Robinson's family and Mr. Arline's [1] family, you're not permitted to leave the courtroom and talk to any of these witnesses about what's going on. And quite frankly in light of what one of the jurors told me that there was a lot of chitchat or chatter out in the lobby about this case, I'm going to ask Deputy North and Mr. Lovelace,[2] you need to watch this. I want you all

---

1. It appears from the record that "Mr. Arline" was a potential witness who ultimately was not called to testify. We cannot discern from the record how Mr. Arline was connected to the case.

2. Deputy North evidently was assigned to provide security in the courtroom that day. The record does not disclose the precise identity

just staying in the courtroom, so then there won't be any issue about whether you all are chatting or not chatting in front of other people. So just stay in the courtroom and then I'm not going to have any issue. Okay? No, you're going to have to not even take a smoke, okay? Now that means at lunchtime and if I take a break, like a 15 minute break, I mean you can leave the courtroom, but you just have to understand you can't go out in the lobby, you can't go out in front of the courthouse.

The court then took a short recess.

. When proceedings resumed, the prosecutor told the court about a conversation one of Appellant's family members had just had with a witness in the prosecutor's office. It is clear from the record that spectators were in the courtroom as the following events unfolded:

[PROSECUTOR]: Your Honor, before we bring the jury back out, or anyone else in. I have an issue I'd like to raise. When I left the office, I'm sorry when I left the courtroom during the break, went in to my office and was approached by one of our witnesses. The witness said to me that while jury selection was going on, one of Mr. Robinson's family members had gone into the office and told her to lie. I've asked Ms. Shore to be here because she was present during that conversation and so I would, I know it's highly unusual and family's allowed to be here, but my understanding of the conversation is that it's someone who represented herself as Mr. Robinson's sister, said her mother said to tell her to lie.

[APPELLANT]: Who?

[PROSECUTOR]: I would really like the family excluded at this point.

THE COURT: Bring them on in. Bring, I, bring the young lady in right now.

---

of Mr. Lovelace, but we can infer from the record that he was among the courtroom personnel.

[APPELLANT]: Who? Call my sister in here, I don't know what you're talking about.

[PROSECUTOR]: She has a pink bag is how she was described to me. I understand it was before the rule on witnesses, but, even so, Your Honor, this is ridiculous.

The court directed the deputy sheriff to locate Appellant's sister and bring her into the courtroom. As that was happening, the court and prosecutor continued discussing the situation:

[PROSECUTOR]: Your Honor, I'm not making the allegation that it was a threat, but it certainly was improper and trying to incite false testimony.

THE COURT: Well, the problem is there's a, isn't there a crime, intimidation of a witness or trying to, what is it, subordinate, subordinate [sic] perjury?

[PROSECUTOR]: Yes, yes.

The transcript reflects that the prosecutor and defense counsel then had a discussion off the record. Proceedings resumed on the record, with the following:

[APPELLANT]: You can't find her? She didn't come in.

THE COURT: One problem is that excluding his family from the courtroom then puts them out with the public and I've got concerns about whether they can keep their mouths shut while sitting outside the Courthouse and not somehow

. . .

[PROSECUTOR]: Your Honor, my issue was that testifying is difficult and uncomfortable enough when confronting someone, but to then have that . . .

THE COURT: Oh, okay, all right, okay. I see what you're saying.

[APPELLANT]: Your Honor, that's not true. They can question my sister about this when she come in.

THE COURT: I am.

MR. LOVELACE: Would you like to put her on the witness stand?

THE COURT: Well, first of all, I'm just going to have them bring her inside then while, I'm going to tell her what has been ...

MR. LOVELACE: Okay.

THE COURT: Well, because if I put her on the witness stand, I mean there's a potential for her to be criminally charged as a result of what she is alleged to have done.

Appellant's sister was then brought into the courtroom and the judge questioned her about the conversation:

THE COURT: Okay, the young lady with the pink purse, I need you to come on up here please. Okay you can just stand, you can just stand right, right there. What's your name?

Appellant's sister identified herself as Susan Price and gave her age as seventeen years old. The exchange continued:

THE COURT: Seventeen. Susan, it's been brought to my attention by members of the State's Attorney's Office that you went into the State's Attorney's Office and attempted to talk to one of the State's witnesses.

MS. PRICE: I said hi to my friend.

THE COURT: Excuse me, ma'am. And encouraged them not to tell the truth. Now if this [is] in fact true ...

MS. PRICE: I said hi to my friend.

THE COURT: Excuse me. If that is, in fact, true, that is a crime, but additionally you were instructed that you were not to have any contact with any of the witnesses. So what business you had going into the State's Attorney's Office, I don't know. I am just bringing this to your attention as a result of what has been reported to me.

[APPELLANT]: What'd you say, Susan?

THE COURT: Mr. Robinson.

MS. PRICE: I just wanted to say hi to her.

THE COURT: Mr. Robinson, excuse me, Mr. Robinson.

MS. PRICE: Cause that's my friend from school.

THE COURT: As I said, excuse me, excuse me. Did you not under, what part of you [sic] cannot have contact with any of the witnesses did you not understand?

MS. PRICE: I didn't know that, you didn't say that before I left.

THE COURT: Excuse me, Ms. Robinson, Ms. Price. All right, what I'm going to end up doing is I'm excluding the entire family from the courtroom. Now I don't know where they're going to go that they don't have contact with anybody else in this case.

The court discussed with courtroom personnel the possibility of placing the family spectators in a separate courtroom by themselves, away from the public. The court then advised Ms. Price that she could "go back and sit with your mom."

At that point, Appellant's mother, Ms. Thomas, addressed the court about being forced to leave the courtroom:

MS. THOMAS: Your Honor?

THE COURT: I don't want to hear from anybody. Everyone's going to be, you're going to leave the courtroom. I have to find some place to put you all.

MS. THOMAS: Right.

THE COURT: Where you will not interfere with this case today . . .

MS. THOMAS: I understand, Your Honor, I was just saying she had said that before.

THE COURT: Okay, I don't want to hear, maybe what you're doing is not malicious, Ms. Thomas, but I just don't think you all understand . . .

MS. THOMAS: No, I understand, I do.

THE COURT: Nor respect the decorum that is needed in this particular proceeding. So it's better to just put you all out of the courtroom. So with that said, I'm just going to get you all to leave the courtroom, I just need one of the deputies to maybe sit out there with them, to make sure, I don't know, just to make sure they're not talking to anybody inappropriately. . . . So why don't you all have a seat out

there. Just going to have a deputy sit out there with you so if you end up wandering into some conversation that you shouldn't be having.

MS. THOMAS: Can they sit out there and I'll sit in, I won't say anything. I just ...

THE COURT: Everybody's sitting out there. He's not a juvenile any more. Everybody sit on out there. Maybe if you behave well, in the next hour or two, Ms. Thomas, I'll reconsider, but right now. Everybody in the back, I want everybody out.

UNIDENTIFIED: We not his family.

THE COURT: I don't care. You're out.

The record does not reflect precisely who left the courtroom as the result of the court's order, but we shall assume for present purposes that Appellant's family members and at least two other spectators left. The court then asked both attorneys if they were ready to proceed with the trial, and both acknowledged being ready. As trial proceeded, nothing more was said or done on the record concerning the exclusion of the spectators.

The jury found Appellant guilty of two counts of attempted robbery, two counts of assault in the second degree, two counts of attempted theft of less than $500, disorderly conduct, and disturbance of the public peace by hindering free passage. The court sentenced Appellant to concurrent terms of five years' imprisonment for each count of attempted robbery, with all but one year and three months of those sentences suspended, and to a concurrent term of 30 days' incarceration for disorderly conduct.

## II. The Parties' Contentions

Appellant claims that the court violated his constitutional right to a public trial by excluding his family and other spectators from the courtroom during the trial. Appellant relies on *Waller v. Georgia, supra,* and its Maryland progeny, *Watters v. State,* 328 Md. 38, 612 A.2d 1288 (1992), and *Walker v. State,* 125 Md.App. 48, 723 A.2d 922 (1999). It was in

*Waller* that the Supreme Court identified four factors that must be present before the court can close a criminal trial to the public: (1) a "party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced"; (2) "the closure must be no broader than necessary to protect that interest"; (3) "the trial court must consider reasonable alternatives to closing the proceeding"; and (4) the trial court "must make findings adequate to support the closure." 467 U.S. at 48, 104 S.Ct. at 2216, 81 L.Ed.2d at 39; *see Watters,* 328 Md. at 45, 612 A.2d at 1291 (applying the *Waller* factors); *Walker,* 125 Md.App. at 69–70, 723 A.2d at 933 (same).

Appellant, citing the *Waller* factors, asserts that "there is nothing on the record to indicate that a total closure order was necessary[,]" given the prosecutor's allegation that Appellant's sister, and not others, had spoken with a witness during jury selection. Appellant argues: "[T]here is nothing to illustrate that a total closure was *narrowly tailored* to fulfill the court's concerns. Conversely, the court imposed the *most restrictive* order possible." (Emphasis in original.) Appellant evidently does not quarrel with the prosecutor's stated interest that the witnesses might be intimidated by the presence of his family and other certain persons in the courtroom. Nor does he argue that the court failed to make the requisite factual findings in support of closure.

The State's primary rejoinder to Appellant's claim of error is that he did not preserve the claim for appellate review because he did not object to the court's ordering the family and other spectators out of the courtroom. On the merits of the claim, the State acknowledges the demands of *Waller* but argues that what occurred in the present case was a mere "partial closure" of the courtroom. The State maintains that in such instances "a 'less stringent standard [for exclusion of persons from trial] is justified because a partial closure does not implicate the same secrecy and fairness concerns that a total closure does.' " *See Walker,* 125 Md.App. at 72–73, 723 A.2d at 934 (citations omitted). The State also acknowledges the need for evidentiary support for courtroom closure, wheth-

er partial or complete. The State argues that the record here satisfies that requirement.

Appellant opted not to file a reply brief. At oral argument, however, Appellant responded to the State's argument that his appellate claim is not properly preserved for review. Appellant did not deny the lack of defense objection to the court's order. He suggested that the trial court has the obligation, even in the absence of objection, to adhere to the *Waller* analysis, and the failure to do so is a "structural error" that cannot be waived by a failure to object. He also asked, in the alternative, that we exercise our discretion to take cognizance of "plain error" which, he argues, was material to his right to a fair trial.

### III. Discussion

■ The question Appellant presents, and which we granted *certiorari* to review, implicates the constitutional right to a public trial. *See* U.S. CONST. AMEND. VI ("In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . . "). *See also Tharp v. State,* 362 Md. 77, 92–93, 763 A.2d 151, 158–59 (2000) (tracing the right of criminal defendants to a public trial in Maryland to its common law roots, and noting that the right to "[t]he openness of criminal trials also finds penumbral support in Article 21 of the [Maryland] Declaration of Rights"). Consequently, criminal trials are to be open to the public as a matter of course, and any closure of the courtroom for even part of the trial and only affecting some of the public must be done with great caution. This is because the right to a public trial "has always been recognized as a safeguard against any attempt to employ our courts as instruments of persecution." *In re Oliver,* 333 U.S. 257, 270, 68 S.Ct. 499, 506, 92 L.Ed. 682, 692 (1948).

■■ That said, a criminal defendant's right to a public trial is not absolute. We agree with the Court of Special Appeals' observation in *Walker, supra,* that

[t]he Sixth Amendment does not require a court to forfeit its legitimate and substantial interest in maintaining securi-

ty and order in the courtroom. To the contrary, prophylactic measures, including closure, may be warranted under some circumstances, in order to maintain order, to preserve the dignity of the court, and to meet the State's interests in safeguarding witnesses and protecting confidentiality.

125 Md.App. at 69, 723 A.2d at 932.

■ Notwithstanding the importance of the question presented, we find that, for a number of reasons, we cannot reach the parties' arguments for and against the merits of the court's order. First and foremost, Appellant has not preserved his complaint for appellate review.

■ Maryland Rule 8–131(a) provides, in pertinent part: "Ordinarily, the appellate court will not decide any [ ] issue unless it plainly appears by the record to have been raised in or decided by the trial court[.]" The purpose of Md. Rule 8–131(a) is " 'to ensure fairness for all parties in a case and to promote the orderly administration of law.' " *State v. Bell,* 334 Md. 178, 189, 638 A.2d 107, 113 (1994) (quoting *Brice v. State,* 254 Md. 655, 661, 255 A.2d 28, 31 (1969)). Fairness and the orderly administration of justice is advanced "by 'requiring counsel to bring the position of their client to the attention of the lower court at the trial so that the trial court can pass upon, and possibly correct any errors in the proceedings.' " *Bell,* 334 Md. at 189, 638 A.2d at 113 (quoting *Clayman v. Prince George's County,* 266 Md. 409, 416, 292 A.2d 689, 693 (1972)). For those reasons, Md. Rule 8–131(a) requires an appellant who desires to contest a court's ruling or other error on appeal to have made a timely objection at trial. The failure to do so bars the appellant from obtaining review of the claimed error, as a matter of right.

■ From time to time, however, an appellant will ask the appellate court to excuse the failure of a timely objection by resorting to the language of Md. Rule 8–131(a) that the appellate court "ordinarily" will not decide an issue "unless it plainly appears on the record to have been raised in or decided by the trial court[.]" We have made clear that the word "ordinarily" has the limited purpose of granting to the

appellate court the prerogative to address the merits of an unpreserved issue, in the appropriate case. *See Bell,* 334 Md. at 188, 638 A.2d at 113. Such prerogative to review an unpreserved claim of error, however, is to be rarely exercised and only when doing so furthers, rather than undermines, the purposes of the rule. *Jones v. State,* 379 Md. 704, 714, 843 A.2d 778, 784 (2004); *see Conyers v. State,* 354 Md. 132, 150–51, 729 A.2d 910, 919–20 (1999) (discussing the narrow circumstances under which this Court will exercise its discretion to review an unpreserved issue).

We have said that the appellate court should exercise the discretion to review an unpreserved claim of error "only when it is clear that it will not work an unfair prejudice to the parties or to the court." *Jones,* 379 Md. at 714, 843 A.2d at 784. Unfair prejudice may result, for example, when counsel fails to bring the position of her client to the attention of the trial court so "that court can pass upon and correct any errors in its own proceedings." *Id.* It would be unfair to the trial court and opposing counsel, moreover, if the appellate court were to review on direct appeal an un-objected to claim of error under circumstances suggesting that the lack of objection might have been strategic, rather than inadvertent. *See id.; Conyers,* 354 Md. at 150, 729 A.2d at 919 (observing that "[t]he few cases where we have exercised our discretion to review unpreserved issues are cases where prejudicial error was found and the failure to preserve the issue was not a matter of trial tactics"). Moreover, if the failure to object is, or even might be, a matter of strategy, then overlooking the lack of objection simply encourages defense gamesmanship. *See, e.g., State v. Rose,* 345 Md. 238, 250, 691 A.2d 1314, 1320 (1997) (observing that excusing the requirement of a contemporaneous objection by defense counsel "would allow defense attorneys to remain silent in the face of the most egregious and obvious instructional errors at trial").

In addition, the appellate court should evaluate whether the exercise of the discretion provided by Md. Rule 8–131(a) to address an unpreserved claim "will promote the

orderly administration of justice," by "prevent[ing] the trial of cases in a piecemeal fashion, thereby saving time and expense and accelerating the termination of litigation." *Jones*, 379 Md. at 715, 843 A.2d at 784. Thus, the appellate court might address an unpreserved issue for guidance to the court and parties, when for other reasons the case is remanded for further proceedings.

None of these policy reasons warrants our reviewing the trial court's order notwithstanding Appellant's failure to object to it. Appellant cannot deny that his silence resulted in the court's "not passing upon and correct[ing] any errors in its own proceedings." Indeed, we are confident that, had defense counsel brought to the attention of the court the lack of a full *Waller v. Georgia* analysis before exclusion of persons from the courtroom, the court would have undertaken the on-the-record fact-finding and analysis required by that decision.

Furthermore, Appellant makes no attempt to argue that the lack of defense objection was mere oversight, rather than the deliberate decision of defense counsel not to object. To be sure, no one can know from this record why defense counsel stood silent as the events unfolded. We can be virtually certain, however, given the lengthy discussion that preceded the court's issuance of its order, that defense counsel had ample opportunity to object. And, though we may not at this juncture attempt to assign a reason for the lack of defense objection, we cannot ignore the possibility that defense counsel did not object because he believed it better for his client to have his family members and others out of the courtroom during trial.[3] Under these circumstances, it would be unfair to the court and prejudicial to the State to review Appellant's unpreserved claim of error. *See Jones*, 379 Md. at 714, 843 A.2d at 784. Finally, this is not a case in which interest in the orderly administration of justice augurs in favor of reviewing

---

3. It is precisely because we cannot ascertain from the record why defense counsel did not object to the court's order that the claim is better suited for post conviction review, should Appellant desire to pursue the claim at that juncture. *See Stewart v. State,* 319 Md. 81, 92, 570 A.2d 1229, 1234 (1990).

the unpreserved issue, particularly given that the lack of objection leaves us with a less than fully developed record on the issue. *See id.* at 715, 843 A.2d at 784.

 That Appellant's claim of error implicates a constitutional protection, moreover, does not excuse his failure to make ·a contemporaneous objection to the court's order. We have made it abundantly clear that " '[e]ven errors of Constitutional dimension may be waived by failure to interpose a timely objection at trial.' " *Taylor v. State,* 381 Md. 602, 614, 851 A.2d 551, 558 (2004) (quoting *Medley v. State,* 52 Md.App. 225, 231, 448 A.2d 363, 366, *cert. denied,* 294 Md. 544 (1982)). And we have applied that proposition in a number of situations. *See, e.g., Taylor,* 381 Md. at 626–27, 851 A.2d at 565 (applying Md. Rule 8–131(a) and holding that the petitioner's claim of a double jeopardy violation was not raised at trial and therefore was not preserved for appellate review); *Walker v. State,* 338 Md. 253, 262–63, 658 A.2d 239, 243 (citing Md. Rule 8–131(a) and holding that issues related to the denial of due process because of prosecutorial misconduct and denial of the Sixth Amendment right to counsel during pre-trial proceedings would not be considered because they were not properly raised below), *cert. denied,* 516 U.S. 898, 116 S.Ct. 254, 133 L.Ed.2d 179 (1995); *cf. White v. State,* 324 Md. 626, 640, 598 A.2d 187, 194 (1991) (citing Md. Rule 8–131(a) and stating that a claim of deprivation of the constitutional right to present defense witnesses was not properly before the Court because the argument had not been made to the trial court, but also finding no error on the part of trial court, "[e]ven if the issue had been preserved for appellate review").

Further, the fact that the Sixth Amendment right to a public trial can be characterized as "fundamental" does not change the requirement that any claimed violation of that right be preserved by contemporaneous objection.[4] We held in *Rose,* 345 Md. at 248–49, 691 A.2d at 1319, that a postcon-

----

4. Although in *Waller* the Supreme Court did not describe the right to a public trial as "fundamental," the Court did so in *Herring v. New York,* 422 U.S. 853, 856–57, 95 S.Ct. 2550, 2552–53, 45 L.Ed.2d 593, 597

viction petitioner is not excused from the requirement of timely objection to an allegedly incorrect reasonable doubt jury instruction, notwithstanding that the instruction bears on the defendant's due process entitlement to have the State prove its case beyond a reasonable doubt. *See In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 1073, 25 L.Ed.2d 368, 375 (1970). Pertinent here, we rejected Rose's argument that, because the right to be convicted only upon proof beyond a reasonable doubt is "fundamental," the applicable waiver standard is the standard set forth in *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461, 1466 (1938). We said in that regard: "[A]n intelligent and knowing relinquishment of a right is not required for a waiver of that right to occur simply because the right is of constitutional origin." *Rose*, 345 Md. at 248, 691 A.2d at 1318. We continued:

> Our cases make it clear that, simply because an asserted right is derived from the Constitution of the United States or the Constitution of Maryland, or is regarded as a "fundamental" right, does not necessarily make the "intelligent and knowing" standard of waiver applicable. Rather, most rights, whether constitutional, statutory or common-law, may be waived by inaction or failure to adhere to legitimate procedural requirements.

*Id.*, 691 A.2d at 1319.

The right to a public trial, though "fundamental," is not within the "narrow band of rights that courts have traditionally required an individual knowingly and intelligently [to] relinquish or abandon in order to waive the right or claim." *Hunt v. State*, 345 Md. 122, 138, 691 A.2d 1255, 1262 (1997). Unlike, say, the rights to a jury trial, to counsel, and to require the State to prove its case, which are absolute and can only be foregone by the defendant's affirmative "intelligent and knowing" waiver,[5] the right to a public trial is subject to

---

(1975), describing as "fundamental," the Sixth Amendment rights to, *inter alia*, a "speedy and public trial."

5. *See, e.g., Adams v. U.S. ex rel. McCann*, 317 U.S. 269, 278–79, 63 S.Ct. 236, 241, 87 L.Ed. 268, 274 (1942) (right to a jury trial); *Johnson v.*

the balance of competing concerns. Indeed, the *Waller* test itself evinces, *see* 467 U.S. at 48, 104 S.Ct. at 2216, 81 L.Ed.2d at 39, a defendant's right to a public trial can be foreclosed when the circumstances warrant it.[6]

For the same reasons, we reject the proposition that Appellant is entitled to review of the court's order simply because the deprivation of the right to a public trial is a "structural error," not subject to review for harmless error. *See Neder v. United States,* 527 U.S. 1, 8, 119 S.Ct. 1827, 1833, 144 L.Ed.2d 35, 46 (1999) (citing *Waller, supra,* for the proposition that the denial of a public trial is structural error); *Carter v. State,* 356 Md. 207, 224, 738 A.2d 871, 880 (1999). In that regard, we are in accord with the majority of the federal and state courts that a claimed deprivation of the right to a public trial can be waived by counsel's failure to lodge a contemporaneous objection to the closure.

The Supreme Court, for example, has held that defense counsel's failure to request that a courtroom previously closed for grand jury proceedings be re-opened for the defendant's criminal contempt proceeding waived the defendant's due process right to a public proceeding, which the Court stated is akin to the Sixth Amendment right to a public trial. *See Levine v. United States,* 362 U.S. 610, 618–19, 80 S.Ct. 1038, 1043–44, 4 L.Ed.2d 989, 1000 (1960). Closer still to the present case is *United States v. Hitt,* 473 F.3d 146 (5th Cir.2006), *cert. denied,* 549 U.S. 1360, 127 S.Ct. 2083, 167 L.Ed.2d 802 (2007). In *Hitt,* the United States Court of Appeals for the Fifth Circuit refused to consider the merits of the claim of the two appellants that the court committed

---

*Zerbst,* 304 U.S. at 468–69, 58 S.Ct. at 1024–25, 82 L.Ed. 1461 at 1468 (right to counsel); *Brookhart v. Janis,* 384 U.S. 1, 7–8, 86 S.Ct. 1245, 1248–49, 16 L.Ed.2d 314, 318–19 (1966) (right to plead not guilty).

6. It is for this reason that we disagree with the view of the dissent that the right to a public trial cannot be waived by the defendant's "inaction." *See* 410 Md. at 97–98, 976 A.2d at 1076. Were the dissent's view correct, then the defendant's refusal to make an "intelligent and knowing" waiver of the right would preclude a trial judge from ever closing a courtroom, no matter the circumstances warranting closure.

reversible error by closing the courtroom during the suppression hearing and the victim's trial testimony, without first considering the *Waller* prerequisites. *Id.* at 155. The court, recognizing that denial of a public trial is "structural error," stated nonetheless that "[w]here a defendant, with knowledge of the closure of the courtroom, fails to object, that defendant waives his right to a public trial." *Id.* The Court therefore held that, because the appellants' trial counsel had not objected to the closure at trial, the appellants had waived the right to complain on appeal that the closure was not done in accordance with *Waller.* *Id.*

Cases from federal courts of appeal are to like effect. *See United States ex rel. Bruno v. Herold,* 408 F.2d 125, 128–29 (2d Cir.1969) (holding that the federal habeas corpus petitioner was not entitled to a new trial on the grounds that he was denied his right to a public trial, given that his trial counsel had not objected to the courtroom being cleared of some spectators during a portion of the trial), *cert. denied sub nom. Bruno v. Herold,* 397 U.S. 957, 90 S.Ct. 947, 25 L.Ed.2d 141 (1970); *United States v. Sorrentino,* 175 F.2d 721, 723–24 (3d Cir.1949) (rejecting the appellant's contention that his counsel's waiver did not bind him and concluding that the appellant had validly waived his right to a public trial); *cf. Hutchins v. Garrison,* 724 F.2d 1425, 1431 (4th Cir.1983) (holding that the habeas petitioner had affirmatively waived his right to a public trial by agreeing to have the trial court consider his motion to dismiss counsel in a closed hearing); *Martineau v. Perrin,* 601 F.2d 1196, 1200 (1 st Cir.1979) (holding that the habeas corpus petitioner, through counsel's actions and his own inaction upon learning of the fact that doors to the courtroom had been locked for a time, had effectively waived the right to a public trial).

State courts similarly hold. *See, e.g., Wright v. State,* 340 So.2d 74, 79–80 (Ala.1976) (holding that defense counsel's assertion that excluding the public during the appellant's trial "is within the [c]ourt's discretion," coupled with counsel's failure to object to the closure, amounts to the appellant's waiver of the right to claim a violation of the entitlement to a

public trial); *People v. Lang,* 49 Cal.3d 991, 264 Cal.Rptr. 386, 782 P.2d 627, 651 (1989) (restating prior decisions of California courts for the proposition that the right to a public trial can be waived by a failure to object, and holding that defense counsel waived the appellant's claim of a denial of the right to a public trial by agreeing at trial to the exclusion of the public from a reading of certain trial testimony to the jury during its deliberations); *Alvarez v. State,* 827 So.2d 269, 274–76 (Fla. Dist.Ct.App.2002) (holding that the failure to object to court-room closure constitutes a waiver of the right to challenge the closure on appeal); *People v. Marathon,* 97 A.D.2d 650, 650, 469 N.Y.S.2d 178 (N.Y.App.Div.1983) (stating that a defendant can waive his right to a public trial by failing to object to the closure of the courtroom, and holding that "[t]hat is precisely what defendant did in the instant case"); *State v. Butterfield,* 784 P.2d 153, 155–57 (Utah 1989) (holding that the appellant's failure to make a contemporaneous objection to a closure order precluded appellate review of the issue). *But see State v. Bethel,* 110 Ohio St.3d 416, 854 N.E.2d 150, 170 (2006) (holding that, under the Ohio Constitution, the right to a public trial cannot be waived by the appellant's failure to object that the hearing at which his plea agreement was discussed was closed to the public); *State v. Bone–Club,* 128 Wash.2d 254, 906 P.2d 325, 327 (1995) (holding that the appellant could complain on appeal about closure of the court-room during the testimony of an undercover police officer at the suppression hearing, notwithstanding the lack of objection at the hearing).

 Consistent with the vast majority of the courts that have spoken on the subject, we hold that a claimed violation of the right to a public trial must be preserved for appellate review by a timely objection at trial, notwithstanding that the allegation implicates structural error. Therefore, Appellant is not excused from his failure to object to the court's order excluding his family and certain other persons from trial simply because the claimed error is "structural."

Further, none of the cases we have discussed and nothing in this record presents a reason to exercise our discretion under Maryland Rule 8–131(a) to address Appellant's unpreserved claim that the court erred when it excluded his family and other spectators from trial. We are particularly loath to do so, given the possibility that Appellant's lack of objection may have been the product of design, and the fact that the very analysis Appellant complains was not done by the trial court likely would have been done had he brought the matter to the court's attention.

▇▇▇ Finally, we reject Appellant's invitation, made for the first time in oral argument before us, to take cognizance of the issue under the guise of "plain error." Such review is reserved for those errors that are "compelling, extraordinary, exceptional or fundamental to assure the defendant of [a] fair trial." *See Rubin v. State*, 325 Md. 552, 588, 602 A.2d 677, 694 (1992) (citation and internal quotation marks omitted). We will intervene "in those circumstances only when the error complained of was so material to the rights of the accused as to amount to the kind of prejudice which precluded an impartial trial." *Id.* In that regard, we "review the materiality of the error in the context in which it arose, giving due regard to whether the error was purely technical, the product of conscious design or trial tactics or the result of bald inattention." *Id.*

Appellant did not file a reply brief arguing why he is entitled to such extraordinary review. Moreover, the reasons why we have declined to overlook Appellant's failure to preserve the issue by contemporaneous objection, including the lack of a fully developed record on the claim, demonstrate why this is not remotely a case that cries out for review under the guise of "plain error."

**JUDGMENTS AFFIRMED. COSTS TO BE PAID BY APPELLANT.**

BELL, C.J., BATTAGLIA and GREENE, JJ., Dissent.

GREENE, J., dissenting.

Essentially, the trial judge had concerns that members of Cecil Robinson's ("Robinson") family were discussing the case in the hallway in the presence of potential jurors and that Robinson's sister might have tried to intimidate one of the State's witnesses or suborned perjury. The trial judge questioned Susan Price, Robinson's seventeen year-old sister about her conversation with one of the State's witnesses:

> THE COURT: Seventeen. Susan, it's been brought to my attention by members of the State's Attorney's Office that you went into the State's Attorney's Office and attempted to talk to one of the State's witnesses.
>
> MS. PRICE: I said hi to my friend.
>
> THE COURT: Excuse me, ma'am. And encouraged them not to tell the truth. Now if this [is] in fact true....
>
> MS. PRICE: I said hi to my friend.
>
> THE COURT: Excuse me. If that is, in fact, true, that is a crime, but additionally you were instructed that you were not to have any contact with any of the witnesses. So what business you had going into the State's Attorney's Office, I don't know. I am just bringing this to your attention as a result of what has been reported to me.
>
> [APPELLANT]: What'd you say, Susan?
>
> THE COURT: Mr. Robinson
>
> MS. PRICE: I just wanted to say hi to her.
>
> THE COURT: Mr. Robinson, excuse me, Mr. Robinson.
>
> MS. PRICE: Cause that's my friend from school.
>
> THE COURT: As I said, excuse me, excuse me. Did you not under [stand], what part of you cannot have contact with any of the witnesses did you not understand.
>
> MS. PRICE: I didn't know that, you didn't say that before I left.
>
> THE COURT: Excuse me, Ms. Robinson, Ms. Price. All right, what I'm going to end up doing is I'm excluding the entire family from the courtroom. Now I don't know where

they're going to go that they don't have contact with anybody else in this case.

As the majority points out, "the court discussed with the courtroom personnel the possibility of placing the family spectators in a separate courtroom by themselves, away from the public." After directing Susan Price to go and sit with her mother, the mother addressed the trial judge about the order requiring them to leave the courtroom:

MS. THOMAS: Your Honor?

THE COURT: I don't want to hear from anybody. Everyone's going to be, you're going to leave the courtroom. I have to find some place to put you all.

MS. THOMAS: Right.

THE COURT: Where you will not interfere with this case today.

MS. THOMAS: I understand, Your Honor, I was just saying she had said that before.

THE COURT: Okay, I don't want to hear, maybe what you're doing is not malicious, Ms. Thomas, but I just don't think you all understand. . . .

MS. THOMAS: No, I understand, I do.

THE COURT: Nor respect the decorum that is needed in this particular proceeding. So it's better to just put you all out of the courtroom. So with that said, I'm just going to get you all to leave the courtroom, I just need one of the deputies to maybe sit out there with them, to make sure, I don't know, just to make sure they're not talking to anybody inappropriately. . . . So why don't you all have a seat out there. Just going to have a deputy sit out there with you so if you end up wandering into some conversation that you shouldn't be having.

MS. THOMAS: Can they sit out there and I'll sit in, I won't say anything. I just. . . .

THE COURT: Everybody's sitting out there. He's not a juvenile any more. Everybody sit on out there. Maybe if you behave well, in the next hour or two, Ms. Thomas, I'll

reconsider, but right now. Everybody in the back, I want everybody out.

UNIDENTIFIED: We not his family.

THE COURT: I don't care, you're out.

The above excerpts from the record reveal that the trial judge excluded Robinson's entire family from the courtroom, as well as at least two other spectators. According to the trial judge, the exclusion was necessary to prevent those persons excluded from interfering with the proceedings. Nothing happened, however, in the presence of the trial judge to support the trial judge's restriction on access to the trial, and the judge made no factual findings, as to matters that occurred outside her presence, that would have supported such an overly broad restriction on access to the trial. Thus, in my opinion, the trial court's overly broad order of exclusion constituted a violation of Robinson's right to a public trial under the Sixth Amendment.

## A. The Right to a Public Trial is Fundamental and cannot be Waived by Inaction

The majority holds that because Robinson failed to object to the removal of his family members and other spectators from the courtroom, at the time of the trial, the issue as to denial of his right to a public trial is not preserved for appellate review. 410 Md. 91, 102, 976 A.2d 1072, 1079 (2009). Citing Maryland Rule 8–131(a),[1] the majority maintains that the law required Robinson to make a timely objection at trial, and that the failure to make such an objection bars him from obtaining review of the claimed error. 410 Md. 91, 103–04, 976 A.2d 1072, 1079–80 (2009). Essentially, failure to raise an objec-

---

1. Md. Rule 8–131(a): "Ordinarily, the appellate court will not decide any other issue unless it plainly appears by the record to have been raised in or decided by the trial court, but the Court may decide such an issue if necessary or desirable to guide the trial court or to avoid the expense and delay of another appeal."

tion, in the view of the majority, results in waiver or forfeiture of the right. 410 Md. 91, 106–07, 976 A.2d 1072, 1081 (2009).

The United States Supreme Court and this Court, however, have both held that, in the case of certain fundamental rights, mere inaction is not enough to constitute waiver-some affirmative, knowing and intelligent action is required. *See Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461, 1466 (1938) ("[C]ourts indulge every reasonable presumption against waiver of fundamental constitutional rights and . . . we do not presume acquiescence in the loss of fundamental rights. A waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege.") (internal quotations and citations omitted); *Schneckloth v. Bustamonte,* 412 U.S. 218, 242, 93 S.Ct. 2041, 2055, 36 L.Ed.2d 854, 871 (1973) ("The Constitution requires that every effort be made to see to it that a defendant in a criminal case has not unknowingly relinquished the basic protections that the Framers thought indispensable to a fair trial."); *Knox v. State,* 404 Md. 76, 945 A.2d 638 (2008) (holding that waiver of the fundamental right to counsel must be knowing and intelligent); *Smith v. State,* 375 Md. 365, 825 A.2d 1055 (2003) (holding that waiver of the right to trial by jury must be intentional).

The right to a public trial is guaranteed by the Sixth Amendment to the United States Constitution.[2] This right is a fundamental element of our criminal justice system, working the dual roles of ensuring fairness and justice to the defendant and encouraging witnesses to come forward and discourage perjury. *Waller v. Georgia,* 467 U.S. 39, 46, 104 S.Ct. 2210, 2215, 81 L.Ed.2d 31, 38 (1984). In *Carter v. State,* 356 Md. 207, 215, 738 A.2d 871, 875 (1999), this Court discussed the history of the right, acknowledging "the historical significance, and critical function, that a public trial serves in the administration of justice."

---

2. "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . ." U.S. CONST. AMEND. VI.

The right to a public trial is not unlimited. Proceedings may be closed if the closure is in pursuit of an overriding interest. *See Press–Enterprise Co. v. Superior Court of California*, 464 U.S. 501, 510, 104 S.Ct. 819, 824, 78 L.Ed.2d 629, 638 (1984); *see also Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 607, 102 S.Ct. 2613, 2620, 73 L.Ed.2d 248, 258 (1982) ("[S]afeguarding the physical and psychological well-being of a minor is a compelling [interest]."); *Smith v. Hollins*, 448 F.3d 533, 539 (2nd Cir.2006) (acknowledging the compelling interest of protecting the anonymity of undercover police officers); *Wisconsin v. Ndina*, 315 Wis.2d 653, 761 N.W.2d 612, 629 (2009) (allowing for removal of defendant's family members when they violated the court's order to sequester witnesses). There is a specific process, however, that must be followed before a trial may be closed to the public:

> [T]he party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, the closure must be no broader than necessary to protect that interest, the trial court must consider reasonable alternatives to closing the proceeding, and it must make findings adequate to support the closure.

*Waller v. Georgia*, 467 U.S. at 48, 104 S.Ct. at 2216, 81 L.Ed.2d at 39.

Given the importance and historical significance of the right to a public trial, and the specific process required for overriding that right, more than mere inaction should be required for the waiver of this fundamental right. Maryland courts have not affirmatively ruled on this issue, but the reasoning of other jurisdictions is persuasive:

> It is, however, insisted by counsel for the state that because no objection or exception was entered or taken by the appellant at the time of the trial the error, if any, cannot now be taken advantage of. With this we do not agree. In the case of *State v. Crotts*, 22 Wash. 245, 60 P. 403 (1900), which decided that the action of the trial court in commenting on the facts in a criminal case being an invasion of the constitutional rights of the accused, such action may be reviewed on appeal, although no exception or objection was

interposed at the time, it was said: "Where the constitutional right has been invaded, it has been held by this court that no failure of objection or exception should stand in the way of considering errors based on the violation of such provisions."

*State v. Marsh,* 126 Wash. 142, 217 P. 705, 706 (1923) (discussing the right to a public trial when an adult defendant was convicted and sentenced in a private hearing that was closed to the general public, with only his parents and social service representatives present).

The right to a public trial is guaranteed by the Sixth Amendment to the United States Constitution and by Section 10, Article I of the Ohio Constitution. Although Bethel did not object to the closing of the hearing, the right to a public trial under Section 10, Article I of the Ohio Constitution cannot be waived by the defendant's silence.

*State v. Bethel,* 110 Ohio St.3d 416, 854 N.E.2d 150, 170 (2006).

There is no evidence in the record that Robinson affirmatively waived his right to a public trial. Nothing less than a knowing and intelligent waiver of the right to a public trial should exempt the trial court from engaging in the required analysis. Therefore, Robinson did not waive the right to challenge the trial court's action by failing to object at the time of the order. The question of whether Robinson's rights were violated is properly before this Court.

### B. This Court May Exercise Discretion Under Rule 8–131(a) and Decide Unpreserved Issues

Alternatively, even if the issue was not properly preserved, this Court can exercise discretion under Rule 8–131(a) and choose to rule on the merits of Robinson's case. As cited above, Rule 8–131(a) states:

[o]rdinarily, the appellate court will not decide any other issue unless it plainly appears by the record to have been raised in or decided by the trial court, but the Court may decide such an issue if necessary or desirable to guide the

trial court or to avoid the expense and delay of another appeal.

Thus, pursuant to Rule 8–131(a), we have discretion to decide an issue that may not have been preserved below. *See State v. Bell*, 334 Md. 178, 188, 638 A.2d 107, 113 (1994) ("[A]n appellate court's review of arguments not raised at the trial level is discretionary, not mandatory. The use of the word 'ordinarily' clearly contemplates both those circumstances in which an appellate court will not review issues if they were not previously raised and those circumstances in which it will."); *Gindes v. Khan*, 346 Md. 143, 151, 695 A.2d 163, 167 (1997) (holding that while preservation is the ordinary rule, it is not absolute, and that appellate courts have discretion to consider issues raised for the first time on appeal).

As the plain language of the rule allows for exceptions, the question becomes whether this is a scenario where the Court should exercise discretion. In deciding this question in the past, this Court has stated that:

> [t]here is no fixed formula for the determination of when discretion should be exercised. . . . We have, however, laid out in prior cases, by explanation and example, principles to guide the courts when consideration of unpreserved issues might be proper. . . .
>
> \* \* \* \*
>
> First, the appellate court should consider whether the exercise of its discretion will work unfair prejudice to either of the parties.
>
> \* \* \* \*
>
> Second, the appellate court should consider whether the exercise of its discretion will promote the orderly administration of justice.

*Jones v. State*, 379 Md. 704, 713–15, 843 A.2d 778, 784 (2004). In *Conyers v. State*, the Court explained:

> The few cases where we have exercised our discretion to review unpreserved issues are cases where prejudicial error

was found and the failure to preserve the issue was not a matter of trial tactics. . . . We usually elect to review an unpreserved issue only after it has been thoroughly briefed and argued, and where a decision would (1) help correct a recurring error, (2) provide guidance when there is likely to be a new trial, or (3) offer assistance if there is a subsequent collateral attack on the conviction.

354 Md. 132, 150–51, 729 A.2d 910, 919–20 (1999).

In *Carter v. State,* this Court recognized that the denial of a public trial is "structural error," meaning it "affect[s] the framework within which the trial proceeds, rather than simply [being] an error in the trial process itself." 356 Md. 207, 224, 738 A.2d 871, 880 (1999) (quoting *Arizona v. Fulminante,* 499 U.S. 279, 310, 111 S.Ct. 1246, 1265, 113 L.Ed.2d 302, 331 (1991)). Because of this fundamental defect, and citing *Waller v. Georgia,* the Court went on to say that "while 'benefits of the public trial are frequently intangible, difficult to prove, or a matter of chance, the Framers plainly thought them nonetheless real,' and opined that 'the defendant should not be required to prove specific prejudice in order to obtain relief for a violation of the public-trial guarantee.'" *Carter,* 356 Md. at 224, 738 A.2d at 880. The *Carter* Court also relied on a Third Circuit opinion, *United States ex rel. Bennett v. Rundle,* 419 F.2d 599 (3rd Cir.1969), which held that a petitioner was presumed to have been prejudiced by the court's decision to close the trial to the public.

This presumption of prejudice cuts in favor of this Court exercising its discretion to hear unpreserved issues. Normally the "orderly administration of justice" requires that parties make their positions known at trial to avoid prejudice in bringing up new arguments at a later point. Exercising discretion in this case, however, would not prejudice either party. Indeed, failure to decide this question will allow prejudice to Robinson to continue unchecked.

In addition, ruling on the merits of the issue will provide direction to the trial courts, clarifying the requirement that, before an individual's right to a public trial is limited, the

court must engage in the *Waller* analysis required by the United States Supreme Court. *Waller v. Georgia,* 467 U.S. at 48, 104 S.Ct. at 2216, 81 L.Ed.2d at 39. This issue is also likely to appear in a post-conviction proceeding. Deciding the merits at this point will avoid further appeals. "[Rule 8–131(a)] allows us to consider a matter not addressed in the lower court if it would aid the trial court on remand or prevent another appeal." *Montgomery County Bd. Of Educ. v. Horace Mann Ins. Co.,* 154 Md.App. 502, 518–19, 840 A.2d 220, 230 (2003), aff'd 383 Md. 527, 860 A.2d 909 (2004).

Therefore, this issue is one that is properly before this Court and should be decided on the merits.

## C. Robinson's Right to a Public Trial was Violated When the Trial Judge Excluded Members of Robinson's Family and Others from the Trial

The United States Supreme Court and this Court have made clear that the right to an open and public trial is vital to the fair administration of justice. *See Waller v. Georgia,* 467 U.S. at 46, 104 S.Ct. at 2215, 81 L.Ed.2d at 38 ("The central aim of a criminal proceeding must be to try the accused fairly, and '[o]ur cases have uniformly recognized the public-trial guarantee as one created for the benefit of the defendant.' "); *Press–Enterprise Co. v. Superior Court of California,* 464 U.S. 501, 508, 104 S.Ct. 819, 823, 78 L.Ed.2d 629, 637 (1984) ("No right ranks higher than the right of the accused to a fair trial. But the primacy of the accused's right is difficult to separate from the right of everyone in the community to attend the *voir dire* which promotes fairness."); *In re Oliver,* 333 U.S. 257, 270, 68 S.Ct. 499, 506, 92 L.Ed. 682, 692 (1948) ("Whatever other benefits the guarantee to an accused that his trial be conducted in public may confer upon our society, the guarantee has always been recognized as a safeguard against any attempt to employ our courts as instruments of persecution."); *Carter v. State,* 356 Md. 207, 214, 738 A.2d 871, 874 (1999) ("The right to a public trial ... is deeply rooted in the English common law tradition to promote fairness and public confidence in criminal proceedings, upon which our

system of justice is based."); *Watters v. State*, 328 Md. 38, 612 A.2d 1288 (1992).

This right, however, is not without its limits. "[T]he Court has made clear that the right to an open trial may give way in certain cases to other rights or interests, such as the defendant's right to a fair trial or the government's interest in inhibiting disclosure of sensitive information." *Waller v. Georgia*, 467 U.S. at 45, 104 S.Ct. at 2215, 81 L.Ed.2d at 38. Because the right to a public trial is so essential to the criminal justice system, the process for restricting this right is rigid:

> [T]he party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, the closure must be no broader than necessary to protect that interest, the trial court must consider reasonable alternatives to closing the proceeding, and it must make findings adequate to support the closure.

*Waller*, 467 U.S. at 48, 104 S.Ct. at 2216, 81 L.Ed.2d at 39. The record of the trial judge's decision to exclude Robinson's family and other spectators from the trial does not meet this four-part test: (1) an overriding interest likely to be prejudiced; (2) narrowly tailored closure; (3) consideration of reasonable alternatives; and (4) findings adequate to support the closure.

The state's interest in protecting the integrity of legal proceedings is certainly an overriding interest.[3] *See Wiscon-*

---

**3.** The Court of Special Appeals recently held in *Longus v. State*, 184 Md.App. 680, 689–90, 968 A.2d 140, 146 (2009) that when a closure is partial, i.e. "where only certain persons are barred from the courtroom during a particular witness's testimony" as opposed to complete closure, the trial court must find only a "substantial reason" as opposed to an "overriding interest" to justify the closure. In reaching that result, the intermediate appellate court relied upon federal and other state court cases that have modified the first requirement of the *Waller* test and adopted the "substantial reason" standard. *See Id.* at 689–90 nn. 2–3, 968 A.2d at 146 nn. 2–3. This Court has not yet adopted this standard. In the present case, it is not necessary to decide which test is more appropriate in cases involving a partial closure because under either test, the trial judge should make the appropriate findings of fact.

*sin v. Ndina,* 315 Wis.2d 653, 761 N.W.2d 612, 629 (2009) ("[D]isruptions within the courtroom may be viewed as a justification for a trial court's order excluding family members from the trial ...."); *see also United States v. Hernandez,* 608 F.2d 741, 747 (9th Cir.1979) ("The right to a public trial 'has always been interpreted as being subject to the trial judge's power to keep order in the courtroom. Were this not so a public trial might mean no trial at all at the option of the defendant and his sympathizers.'") (quoting *United States ex rel. Orlando v. Fay,* 350 F.2d 967, 971 (2nd Cir.1965)). Indeed, the parties do not dispute that the trial judge had a duty to ensure the fairness and credibility of the proceedings. Failure to meet the remaining three elements of the *Waller* test is where the trial court erred.

The specific allegations of improper contact with witnesses only extended to Robinson's sister. The trial judge failed to make findings on the record to support the decision to exclude the rest of the family and other unidentified spectators. This indicates that the exclusion order was not narrowly tailored to address the specific problem at hand. There is no evidence that the trial judge considered reasonable alternatives, such as excluding only those individuals who had engaged in inappropriate behavior. Robinson's mother requested that she be allowed to remain even if the rest of the family was excluded. The trial judge denied the mother's request without explanation. In *Yung v. Walker,* 341 F.3d 104, 111 (2nd Cir.2003), the Second Circuit held that,

> *Waller* prevents a court from denying a family member's request to be exempted from a courtroom closure order unless the court is convinced that the exclusion of that particular relative is necessary to protect the overriding interest at stake. Indeed, it would be an unreasonable interpretation of *Waller* for a court to deny such a request if the exclusion of that particular relative, under the specific

---

In this case, the record does not reveal facts that were compelling, nor did the trial judge make the necessary factual findings to support a partial closure.

circumstances at issue, is not necessary to promote the overriding interest.

Without specific findings on the record, it is impossible to determine whether the exclusion order was narrowly tailored to the identified problem. Therefore, the trial court erred in failing to engage in the *Waller* analysis required before infringing on Robinson's right to a public trial.

### D. Remedy

As mentioned above, the denial of a public trial is a structural error. *Carter v. State*, 356 Md. 207, 738 A.2d 871 (1999). Case law indicates that structural errors are not subject to a harmless error analysis because

> [t]hose cases ... contain a "defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself." Such errors "infect the entire trial process" and "necessarily render a trial fundamentally unfair." Put another way, these errors deprive defendants of "basic protections" without which "a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence ... and no criminal punishment may be regarded as fundamentally fair."

*Neder v. United States*, 527 U.S. 1, 8–9, 119 S.Ct. 1827, 1833, 144 L.Ed.2d 35, 46–47 (1999).

In such a situation, the remedy is to remand for a new trial. "When we have determined that the denial of a public trial has occurred, we have held that a new trial, rather than remand to supplement the record, is the proper remedy." *Carter*, 356 Md. at 224, 738 A.2d at 880. Therefore, Robinson's conviction should be reversed and the case remanded to the Circuit Court for Caroline County for purposes of a new trial.

Chief Judge BELL and Judge BATTAGLIA authorize me to state that they join in this dissenting opinion.