*State of Maryland v. Travis Thaniel*, No. 936, September Term, 2017

Opinion by Battaglia, J.

**CRIMINAL PROCEDURE — POSTCONVICTION PROCEDURE — INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL:** The right to the effective assistance of trial counsel is grounded in the Sixth Amendment, made applicable to the States through the Fourteenth Amendment. A claim of ineffective assistance of trial counsel comprises two elements: that counsel's performance was objectively unreasonable under prevailing professional norms, and that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. The petitioner bears the burden of proof.

**CRIMINAL PROCEDURE — POSTCONVICTION PROCEDURE — INEFFECTIVE ASSISTANCE OF COUNSEL GENERALLY — *Strickland v. Washington* — PERFORMANCE PRONG:** Judicial scrutiny of counsel's performance must be highly deferential; accordingly, a reviewing court begins with a strong presumption that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. The reasonableness of counsel's challenged conduct must be judged on the facts of the particular case, viewed as of the time of counsel's conduct. The petitioner must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment, whereupon a reviewing court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance.

**CRIMINAL PROCEDURE — POSTCONVICTION PROCEDURE — INEFFECTIVE ASSISTANCE OF COUNSEL GENERALLY — *Strickland v. Washington* — PREJUDICE PRONG:** An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. Ineffectiveness claims alleging a deficiency in attorney performance are subject to a general requirement that the petitioner affirmatively prove prejudice, defined as "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." A "reasonable probability," and, under Maryland law, its equivalent, a "substantial possibility," is a probability sufficient to undermine confidence in the outcome. That standard lies between, on the one hand, a showing that the errors had some conceivable effect on the outcome of the proceeding, and a showing by a preponderance of the evidence that counsel's errors affected the outcome.

**CRIMINAL PROCEDURE — POSTCONVICTION PROCEDURE — INEFFECTIVE ASSISTANCE OF COUNSEL GENERALLY —** *Strickland v. Washington* **— BOTH ELEMENTS MUST BE ESTABLISHED TO OBTAIN RELIEF:** Because deficient performance and prejudice are elements of an ineffective assistance claim, both of which must be proven by a postconviction petitioner, there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in a specific order or even to address both components of the inquiry if the petitioner makes an insufficient showing on one. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, that course should be followed.

**CRIMINAL PROCEDURE — POSTCONVICTION PROCEDURE — INEFFECTIVE ASSISTANCE CLAIM BASED UPON FAILURE TO OBJECT TO STRUCTURAL ERROR:** It remains an open question whether, under some circumstances, prejudice may be presumed where trial counsel's deficient performance has resulted in the procedural default of a structural error. In the specific case where that structural error is a violation of the defendant's right to a public trial through closure of the courtroom during voir dire, the Supreme Court has held that prejudice must be proven.

**CRIMINAL PROCEDURE — POSTCONVICTION PROCEDURE — INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL FOR AGREEING TO THE CLOSURE OF THE COURTROOM DURING VOIR DIRE:** In the instant case, trial counsel had a reasonable basis for agreeing to the closure of the courtroom during voir dire, given the evidence that trial counsel had acted, at least in part, to avoid a possible outbreak of violence between spectators sympathetic to his client and spectators sympathetic to the victim. Therefore, the postconviction court erred in finding that trial counsel had performed deficiently. Moreover, under *Weaver v. Massachusetts*, 137 S. Ct. 1899 (2017), rendered shortly after the postconviction court's ruling but fully applicable to this case, the petitioner here has failed to demonstrate prejudice, whether measured under the usual *Strickland* standard or the alternative standard (whether the public trial violation rendered petitioner's trial fundamentally unfair) assumed in *Weaver*.

**CRIMINAL PROCEDURE — POSTCONVICTION PROCEDURE ACT — WAIVER:** Under the Maryland Uniform Postconviction Procedure Act, as interpreted by the Court of Appeals, a defendant may forego a broad spectrum of rights—indeed, all rights that do not require a knowing and voluntary waiver—which fall within the category of tactical decisions by counsel or involve procedural defaults.

**CRIMINAL PROCEDURE — POSTCONVICTION PROCEDURE — WAIVER — FREESTANDING CLAIM THAT CLOSURE OF THE COURTROOM DURING VOIR DIRE VIOLATED PETITIONER'S RIGHT TO PUBLIC TRIAL:** Because trial counsel affirmatively waived the petitioner's right to public trial during voir

dire, the petitioner's postconviction claim that his right to public trial was thereby violated is conclusively waived.

**CRIMINAL PROCEDURE — POSTCONVICTION PROCEDURE — INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL FOR FAILING TO OBJECT WHEN THE TRIAL COURT AND COUNSEL ADDRESSED A JUROR NOTE IN PETITIONER'S ABSENCE:** In the instant case, trial counsel waived the petitioner's presence at a bench conference, during jury deliberations, at which court and counsel addressed a note from the jury. Because Maryland Rule 4-231(c) expressly allowed trial counsel to do so, trial counsel did not act unreasonably in waiving the petitioner's presence. Moreover, the petitioner has failed to show that, had trial counsel ensured that he was present at the bench conference, there is a reasonable probability that the outcome of the trial would have been different. Accordingly, the postconviction court erred in granting relief on this claim.

**CRIMINAL PROCEDURE — POSTCONVICTION PROCEDURE — INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL:** The right to the effective assistance of appellate counsel derives from an amalgamation of the Due Process and Equal Protection Clauses of the Fourteenth Amendment. Generally, claims of ineffective assistance of appellate counsel are governed by the same test applicable to claims of ineffective assistance of trial counsel—the two-prong test of *Strickland v. Washington*.

In the appellate context, a reviewing court assessing appellate counsel's performance must bear in mind that counsel is not required to argue every possible issue on appeal. Counsel need not (and should not) raise every nonfrivolous claim, but rather may select from among them to maximize the likelihood of success on appeal.

To satisfy the prejudice prong, the petitioner must establish to a reasonable probability that, but for his counsel's failure to raise an issue, he would have prevailed on his appeal. As applicable to an ineffective assistance claim based upon the failure to raise an unpreserved issue, a petitioner would have prevailed on appeal only if the appellate court would have found plain error.

**CRIMINAL PROCEDURE — POSTCONVICTION PROCEDURE — INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL FOR FAILING TO RAISE THE ISSUE OF THE TRIAL COURT'S PURPORTED ERROR IN ADDRESSING A JUROR NOTE IN THE PETITIONER'S ABSENCE:** Because trial counsel did not object to the petitioner's absence at the bench conference at issue, any claim that the trial court erred in conducting that bench conference in the petitioner's absence was unpreserved. Although there is no hard-and-fast rule that appellate counsel has no obligation whatsoever to raise an unpreserved issue, it is nonetheless true that, under these circumstances, the petitioner bore a high burden—he was required to show

that there is a reasonable probability that the appellate court would have granted him relief on his underlying claim under the plain error doctrine. Because the petitioner made no such showing, the postconviction court erred in granting relief on this claim.

**CRIMINAL PROCEDURE — POSTCONVICTION PROCEDURE — CUMULATIVE EFFECT OF MULTIPLE ATTORNEY ERRORS:** If a postconviction petitioner establishes that trial counsel committed multiple errors, a reviewing court, in assessing whether the petitioner is entitled to a new trial, must consider the cumulative effect of all those errors, and it is possible that a petitioner is entitled to a new trial even if no single error, considered in isolation, resulted in sufficient prejudice.

**CRIMINAL PROCEDURE — POSTCONVICTION PROCEDURE — CUMULATIVE EFFECT OF MULTIPLE ATTORNEY ERRORS:** In the instant case, the only errors the petitioner established were trial counsel's failure to file timely motions for modification of sentence and for sentence review by a three-judge panel. The only relief to which he is entitled is the right to file belated motions seeking those avenues of relief. Because the petitioner has otherwise failed to show that either trial counsel or appellate counsel performed deficiently, his cumulative prejudice claim (which presupposes those non-existent errors) must fail.

Circuit Court for Baltimore City
Case Nos. 104173062 - 63

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 936

September Term, 2017

_____


STATE OF MARYLAND

v.

TRAVIS THANIEL

_____


Eyler, Deborah S.,
Meredith,
Battaglia, Lynne A.
    (Senior Judge, Specially Assigned),

JJ.
_____


Opinion by Battaglia, J.
_____


Filed:  August 29, 2018

Pursuant to Maryland Uniform Electronic Legal Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Bessie Decker, Clerk
April 20, 2018

In 2005, a jury, sitting in the Circuit Court for Baltimore City, convicted Travis Thaniel, appellee, of first-degree murder of Shawn Boston, attempted second-degree murder of Catherine Jones, and use of a handgun in the commission of a crime of violence. The court thereafter sentenced Thaniel to life imprisonment for first-degree murder and consecutive terms of thirty years for attempted second-degree murder and twenty years for use of a handgun in the commission of a crime of violence. A panel of this Court affirmed his convictions on direct appeal. *Thaniel v. State*, No. 1374, September Term, 2005 (filed Sept. 25, 2007), *cert. denied*, 402 Md. 354 (2007).

Thaniel subsequently filed a postconviction petition, raising claims of ineffective assistance of both trial and appellate counsel. The postconviction court granted his petition and ordered a new trial. The State thereafter filed an application for leave to appeal, which we granted and transferred the case to our appellate docket. The State now raises the following questions for our consideration:

I.    Whether the postconviction court erred in concluding that trial counsel was ineffective in agreeing to close the courtroom during jury selection;

II.   Whether the postconviction court erred in concluding that trial counsel was ineffective in failing to object when the trial court and counsel addressed a note from the jury in Thaniel's absence;

III.  Whether the postconviction court erred in concluding that appellate counsel was ineffective in failing to raise on appeal an unpreserved claim that the trial court erred in addressing a note from the jury in Thaniel's absence; and

IV.   Whether the postconviction court erred in concluding that the cumulative effect of trial counsel's alleged errors warranted postconviction relief.

We find merit in the State's contentions and shall vacate the postconviction court's order but remand, because the State has not challenged one of the postconviction court's rulings, by which it found that trial counsel had been ineffective in failing to file motions to modify sentence and for sentence review by a three-judge panel. Because that ruling stands, we shall direct that the postconviction court issue an order permitting Thaniel to file belated motions to modify sentence and for sentence review by a three-judge panel.

## BACKGROUND

On February 6, 2004, Shawn "Peanut" Boston was driving his car through East Baltimore, accompanied by Catherine Jones, the mother of his son. *Thaniel v. State*, No. 1374, September Term, 2005, slip op. at 3, 4-5. At approximately 9:00 p.m., while they were stopped at a traffic light, Thaniel entered the vehicle and sat in the rear seat. *Id.* at 2, 5. "As they turned onto Eager Street, near her grandmother's residence, [Thaniel] said 'Man, you know what's up. Kick that shit out.'" *Id.* at 5. Boston muttered, "Aw, shit," stopped the car, took an item from beneath his seat, and handed it to Thaniel. *Id.* Thaniel then said, "this was for my man E," and, in Jones's words, "started shooting" Boston and Jones. *Id.*

Boston died from "multiple gunshot wounds." *Id.* at 3. Ms. Jones survived but was seriously injured and endured an extensive hospital stay. When police detectives first attempted to interview her about the shooting, seventeen days afterwards, she "could mouth words, but she could not talk." *Id.* She stated, at that time, that "she had not seen the shooter and that no one else" had been in the car with her, besides Boston. *Id.* She further stated that she was "scared and wanted protection." *Id.* at 3-4. Ultimately, Jones

2

decided to cooperate with the police, having decided that Thaniel "shouldn't get away with this because he tried to take my life, and he took my son's father['s] life." *Id.* at 5.

There were two other witnesses to the shooting, Latisha Privette and Jerome Wiggs. Privette had been a passenger in Wiggs's car on the night of the shooting. *Id.* at 2. As they turned onto Eager Street, she observed a man exiting the back of a vehicle and "shooting through" the driver's side window of the vehicle as he did so. *Id.* Although she could not see the shooter's face, she described him as "tall and dark skinned," wearing a ski cap, "with a thick build." *Id.* & n.4. Privette called 911 and told the operator what she had seen. *Id.* at 2.

Wiggs also observed the man shooting through the driver's side window of Boston's car. He described the shooter as wearing "baggy clothes" and a skull cap and "estimated that he [had] heard 'at least ten shots.'" *Id.* Wiggs stated that he then "got the hell out of there." *Id.* at 3.

In addition to the two eyewitnesses to the crime, a third person, Quante Bell, an acquaintance of Thaniel and Jones, gave a statement to police. In April of 2004, several months after Boston's murder, Bell had been arrested in an unrelated case. While being interrogated, he told Baltimore City Police Detective Raymond W. Laslett, the lead detective in the Boston case, that he had been privy to a conversation between his brother and Thaniel. According to Bell, Thaniel had told Bell's brother that he had shot Boston in the chest. (Later, at Thaniel's trial, Bell would disavow his statement, which was then introduced into evidence as a prior inconsistent statement.)

3

In June of 2004, a grand jury returned two indictments, charging Thaniel with a variety of offenses related to the February 6th shooting. The first indictment charged Thaniel with first-degree murder of Shawn Boston; use of a handgun in the commission of a crime of a felony or violence; and wearing, carrying, or transporting a handgun. The second charged him with attempted first- and second-degree murder of Catherine Jones; first- and second-degree assault of the same victim; use of a handgun in the commission of a crime of a felony or violence; and wearing, carrying, or transporting a handgun. In June of 2005, a trial was held on those charges.

As jury selection was about to begin, the following exchange, which forms the basis for one of Thaniel's ineffective assistance claims, took place:

> [Trial counsel had just been excused from being in the courtroom momentarily while the bailiff arranged for the venire to enter the courtroom.]
>
> THE CLERK: When you do this selection should I have all of them wait outside? We're going to use all 85 chairs.
>
> THE COURT: Oh, you mean for the -- when we select the jury?
>
> THE CLERK: Yeah.
>
> THE COURT: Are they -- are we going to need -- are we going to require all -- all the spaces in the courtroom?
>
> THE CLERK: To get them close up as possible so they [will] be able to hear their number.
>
> THE COURT: Well, they -- I can't clear the courtroom for jury selection. I'm not allowed to do that.
>
> THE CLERK: Oh, okay.

4

THE COURT: So I would suggest -- Mr. [prosecutor], and, Mr. [trial counsel], could you approach for a second again, please?

\* \* \*

THE CLERK: Mr. [trial counsel]?

THE COURT: Mr. [trial counsel], could you approach for a minute, please?

\* \* \*

(Counsel and the defendant approached the bench, and the following ensued:)

THE COURT: Okay.

The clerk's expressed some concern that there may be not enough room for all the -- especially the way the people are spread out now. Now, I -- I'm assuming that there are some people here on behalf of the defendant and there's some people here on behalf of the victim.

[TRIAL COUNSEL]: I don't know, Your Honor. I told my people yesterday, anticipating this problem, that nothing really of consequence is going to happen until the afternoon. So I'm not sure --

THE COURT: Do we have -- do you have people here that you recognize?

[TRIAL COUNSEL]: Anybody there?

THE COURT: People on behalf of the defendant?

[TRIAL COUNSEL]: Huh?

THE DEFENDANT: Yes. (Inaudible).

[TRIAL COUNSEL]: Yeah.

THE COURT: He heard that. Present in the courtroom? Well, what I would suggest -- I don't know who's who. I mean, **I was going to have everybody move to one section but I don't want people who are at enmity with one another sitting next to each other.**

[THE STATE]: **Right. I don't think that would be a good idea.**

THE COURT: So, --

[TRIAL COUNSEL]: I -- **I don't care if you send them outside, Judge. Because there's no room.**

THE COURT: **I can't on my motion clear the courtroom.**

[TRIAL COUNSEL]: I was going to ask that -- them to step out.

THE COURT: During jury selection?

[TRIAL COUNSEL]: Yes. Just because I figured that you --

THE COURT: I'll do -- I'll do it. But can I do that?

[TRIAL COUNSEL]: I'll do it.

THE COURT: Is it -- is it --

THE CLERK: We usually do it, Your Honor.

THE COURT: **Does that in any way violate the defendant's constitutional rights?**

THE CLERK: No. We -- we usually do it when we have a large panel. We have (inaudible).

THE COURT: Yeah. You're all agreeing that it's not going to violate his rights for a public trial --

[THE STATE]: Well, I can only deal with --

6

[TRIAL COUNSEL]:  **We have no objection.  We have no objection.**

THE COURT:  All right.  Fine.  I'll just ask them if they just could just step outside while we select the jury.

In fact, I might as well just excuse them until this afternoon because that's all we're going to do this morning.

* * *

THE COURT:  All right.  Ladies and Gentlemen, who -- those of you who are here as spectators in this case, I'm going to ask you, and this based upon an agreement between the State's Attorney and the defense attorney, to step outside.

The reason why I'm asking you to do this is because we have a large number of jurors coming over here to select a jury from, and I can't have -- I can't -- it's improper to leave the spectators and the jurors mixed up together in the -- in the audience of the courtroom.

So I'm going to ask you if you would please leave.  And the -- we're not going to actually start the trial in this case, the actual trial until this afternoon.  So we're not going to be actually doing anything other than jury selection between now and two o'clock.

So I am going to ask you, if you're not a witness in this case, to please leave the courtroom.  And you're certainly welcome to come back at two o'clock and witness the trial.

Thank you very much.

(Emphasis added.)

Jury selection proceeded in the closed courtroom.  Afterwards, the courtroom was reopened, as promised, and trial proceeded for three days.

After three hours of deliberation, the jury sent two notes to the trial judge, notes 3 and 4, which are the subject of another of Thaniel's postconviction claims.  A bench

7

conference ensued between the judge and counsel for both sides, out of Thaniel's presence:

> THE COURT:  I have two questions here.  One [note 3] is simply that the jurors want to -- it says, "We the jury respectfully request that all trial attendees be held in the courtroom until we have had an opportunity to vacate the building, and give us ample time to make it to our transportation."
>
> And every single juror (inaudible).
>
> [TRIAL COUNSEL]:  Right.  Yeah, okay.
>
> [THE STATE]:  **I heard there were some issues.**[1]
>
> THE COURT:  **Oh, there were.  There was a lot of tension here.**
>
> And then also [note 4] they have reached a verdict in the first count.  They want to know whether -- well, I can't show it to you.  I've never had this happen before.  They've actually reached a verdict of guilty on the first count.  They want to know whether they have to go on to the second count.
>
> [TRIAL COUNSEL]:  (Inaudible).
>
> THE COURT:  They want to know whether they need to reach a verdict on second degree.  Which they really don't, because it merges.
>
> [TRIAL COUNSEL]:  Right.  Right.
>
> THE COURT:  But the thing that I'm not sure of is whether they've reached a verdict on the other count -- the other charges which were submitted.  And I have to find that out.

---

[1] The Assistant State's Attorney present for deliberations was a substitute for the Assistant State's Attorney who had tried the case.  Presumably, the former's remark reflected what he had been told by the latter.

8

Let me just tell you this.  I am not going to do this right now.  I'm going to take a luncheon recess, **give everybody a chance to, you know, prepare.**  And then we'll take the verdict at 2:00 -- do --

[TRIAL COUNSEL]:  **Prepare for what?**

THE COURT:  **Prepare for what's going to happen when the verdict is announced.**

[TRIAL COUNSEL]:  All right.

THE COURT:  **I mean I don't want to put anybody in danger here.**

[TRIAL COUNSEL]:  No, I understand.  But why's it going to be better?  I just want -- I just want to get it over with quite frankly.

THE COURT:  Well, I know you do.

[TRIAL COUNSEL]:  When's -- when's -- when's it going to be better at?

THE COURT:  Because the --

[TRIAL COUNSEL]:  -- better after lunch?

THE COURT:  Because -- well, I just feel more comfortable doing it.

[TRIAL COUNSEL]:  Judge?

THE COURT:  I have to -- the Sheriff -- **the Sheriff needs to be made aware of all of this.  They need to be prepared.**  I'm sorry.  But that's what I'm going to do.

(Emphasis added.)

Further discussion ensued concerning the appropriate response to the jury's question about the form of the verdict.  The court then recessed for lunch, at 12:30 p.m.,

9

intending for the jury to resume deliberations at 2:00 p.m., but less than half-an-hour later, the court reconvened to accept the jury's verdict. Before the jury had been brought in, the trial judge stated for the record that, given "the security issues involved here," Thaniel would "remain shackled" while the verdict was taken.

The jury found Thaniel guilty of first-degree murder of Shawn Boston, attempted second-degree murder of Catherine Jones, first- and second-degree assault of Jones, wearing, carrying, or transporting a handgun, and use of a handgun in the commission of a crime of violence. It acquitted Thaniel of attempted first-degree murder of Jones. After the jury had been polled and its verdict hearkened, the Sheriff escorted them out of the courtroom.

Sentencing was deferred so that a presentence investigation ("PSI") report could be prepared. Thaniel, as noted earlier, received the maximum sentence: an aggregate sentence of life imprisonment plus fifty years. The convictions for first- and second-degree assault of Jones and wearing, carrying, or transporting a handgun were merged for sentencing purposes.

Thaniel appealed, contending that the trial court had erred in admitting into evidence Jones's identification of him as the shooter and that it had further erred in admitting into evidence the audio recording of Bell's out-of-court statement to the police. In an unreported opinion, a panel of this Court rejected both claims and affirmed. *Thaniel v. State*, No. 1374, September Term, 2005.

In 2015, Thaniel filed a pro se postconviction petition, which was later supplemented, with the assistance of counsel. In the supplemental petition, Thaniel raised the following claims:

I.   Ineffective assistance of trial counsel for failing to object to the lack of a unanimous verdict;

II.  Ineffective assistance of trial counsel for failing to object when the trial court violated Maryland Rules 4-231(b) and 4-326(d), governing jury communications;

III. Ineffective assistance of trial counsel for waiving Thaniel's right to a public trial;

IV.  Ineffective assistance of trial counsel for failure to file a motion for modification of sentence and an application for sentence review by a three-judge panel;

V.   The cumulative effect of trial counsel's errors amounted to ineffective assistance; and

VI.  Ineffective assistance of appellate counsel for failing to raise the issues of lack of unanimous verdict and violations of the rules governing jury communications.

Following a hearing on the supplemental petition, the postconviction court granted relief as to all but the first claim and ordered that Thaniel be awarded a new trial. Regarding the ineffective assistance claim related to jury communications, the postconviction court found that the juror notes at issue, notes 3 and 4, "pertained to the action," under Maryland Rule 4-326(d),[2] thereby triggering Maryland Rule 4-231(b),

---

[2] At the time of Thaniel's trial, Maryland Rule 4-326(d) provided:

(d) **Communications with jury.** The court shall notify the defendant and the State's Attorney of the receipt of any

(continued)

which entitles a defendant to be "physically present at . . . every stage of the trial," with exceptions not relevant here.[3] The court further found that Thaniel had not been notified by trial counsel of his right to be present while the trial court addressed the issues raised in those notes. As for the fourth note, which asked whether the jury, having found Thaniel guilty of the flagship count, should consider lesser-included offenses, the

---

(continued)

> communication from the jury pertaining to the action as promptly as practicable and in any event before responding to the communication. All such communications between the court and the jury shall be on the record in open court or shall be in writing and filed in the action.

[3] At the time of Thaniel's trial, Maryland Rule 4-231 provided in pertinent part:

* * *

> (b) **Right to be present — Exceptions.** A defendant is entitled to be present at a preliminary hearing and every stage of the trial, except (1) at a conference or argument on a question of law; (2) when a nolle prosequi or stet is entered pursuant to Rules 4-247 and 4-248; or (3) at a reduction of sentence pursuant to Rules 4-344 and 4-345.

> (c) **Waiver of right to be present.** The right to be present under section (b) of this Rule is waived by a defendant:

>> (1) who is voluntarily absent after the proceeding has commenced, whether or not informed by the court of the right to remain; or

>> (2) who engages in conduct that justifies exclusion from the courtroom; or

>> (3) who, personally or through counsel, agrees to or acquiesces in being absent.

* * *

12

postconviction court found that Thaniel had not demonstrated prejudice. As for the third note, however, which "indicated a safety concern [by the jurors] with how courtroom attendees might react to the verdict," the postconviction court concluded that "it cannot say that the State has met its burden of showing, beyond a reasonable doubt, that the violation was harmless," and it granted relief as to that claim.

Regarding Thaniel's ineffective assistance claim based upon the closure of the courtroom during voir dire, the postconviction court found that "the total closure of the courtroom for the full day it took to conduct the voir dire process in [Thaniel's] case amounted to more than a *de minim[i]s* interference with [his] right to a public trial" and that trial counsel's "failure to have objected to the closure therefore deprived [Thaniel] of his right to effective assistance of counsel."

Regarding Thaniel's ineffective assistance claim based upon trial counsel's failure to file a motion for modification of sentence and an application for sentence review by a three-judge panel, the postconviction court granted relief but did not specify a remedy, presumably because it was ordering a new trial on the other claims. To the extent that the postconviction court ruled that Thaniel is entitled to relief on this claim, the State has not challenged that ruling.

As for Thaniel's claim based upon the cumulative effect of trial counsel's purported errors, the postconviction court concluded that, having found ineffective assistance as to the juror communications, the closure of the courtroom, and the failure to file post-trial motions for modification and sentence review, it found prejudice accruing from the cumulative effect of those errors. Finally, regarding Thaniel's claim of

13

ineffective assistance of appellate counsel, the postconviction court found that, because "the issue of the jury communications was meritorious," appellate counsel rendered ineffective assistance in failing to raise that issue in Thaniel's direct appeal.

The State filed a timely application for leave to appeal, contending that the postconviction court had erred in failing to apply the analytical framework of *Strickland v. Washington*, 466 U.S. 668 (1984), to the claims at issue. We granted that application and transferred the case to the regular appeals docket.

## STANDARD OF REVIEW

The ultimate question of whether counsel was ineffective "is a mixed question of law and fact." *Newton v. State*, 455 Md. 341, 352 (2017) (citing *Harris v. State*, 303 Md. 685, 698 (1985)). We "defer to the factual findings of the postconviction court unless clearly erroneous," but we review its ultimate legal conclusions without deference, "'re-weigh[ing]' the facts in light of the law to determine whether a constitutional violation has occurred." *Id.*

## DISCUSSION

## INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

The right to the effective assistance of trial counsel is grounded in the Sixth Amendment, made applicable to the States through the Fourteenth Amendment. *Strickland v. Washington*, *supra*, 466 U.S. at 685-86. A claim of ineffective assistance of trial counsel comprises two elements: that counsel's performance was objectively unreasonable "under prevailing professional norms," *id.* at 688, and that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the

14

proceeding would have been different." *Id.* at 694. The petitioner bears the burden of proof. *Id.* at 687.

"Judicial scrutiny of counsel's performance must be highly deferential," *id.* at 689; accordingly, a reviewing court begins with a "strong presumption" that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 689-90. We "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 690. It is the petitioner's burden to "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment," whereupon a reviewing court "must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Id.*

"An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691. "[I]neffectiveness claims alleging a deficiency in attorney performance are subject to a general requirement that the defendant affirmatively prove prejudice," *id.* at 693, defined as "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A "reasonable probability," in turn, "is a probability sufficient to undermine confidence in the outcome." *Id.* That standard lies between, on the one hand, a showing "that the errors had some conceivable effect on the outcome of the proceeding," *id.* at 693, and, on the

other hand, a showing by a preponderance of the evidence that counsel's errors affected the outcome. *Id.* at 693-94.

Finally, because deficient performance and prejudice are elements of an ineffective assistance claim, both of which must be proven by a postconviction petitioner, "there is no reason for a court deciding an ineffective assistance claim to approach the inquiry" in a specific order "or even to address both components of the inquiry" if the petitioner "makes an insufficient showing on one." *Id.* at 697. "In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered" by the petitioner "as a result of the alleged deficiencies." *Id.* "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Id.*

### Whether the postconviction court erred in finding trial counsel ineffective for agreeing to the closure of the courtroom during voir dire

The State challenges the postconviction court's conclusion that Thaniel's trial counsel was ineffective in agreeing to the closure of the courtroom during voir dire. According to the State, Thaniel failed to demonstrate either that his trial counsel had performed deficiently in doing so or that he had suffered prejudice as a result.[4] We agree.

---

[4] At the postconviction hearing, the State further contended that, because trial counsel had affirmatively stated that he did not object to the closure of the courtroom during voir dire, Thaniel's claim of ineffective assistance, based upon trial counsel's actions in that regard, had been waived. The postconviction court found that the direct claim, that the closure of the courtroom had violated Thaniel's right to a public trial, would have been waived had it been raised but that his ineffective assistance claim, based upon counsel's waiver of his right to public trial, had not been waived. The State does not challenge that ruling before us.

16

The postconviction court, without applying or even acknowledging the *Strickland* test, found that "the total closure of the courtroom for the full day it took to conduct the voir dire process" during Thaniel's trial "amounted to more than" a *de minimis* interference with his right to a public trial and that trial counsel's failure "to have objected to the closure therefore deprived" Thaniel of his right to effective assistance of counsel. The postconviction court erred in so ruling.

The decision of the Supreme Court in *Weaver v. Massachusetts*, 582 U.S. __, 137 S. Ct. 1899 (2017), rendered one month after the ruling of the postconviction court in the instant case, is dispositive of this claim. In that case, Weaver was standing trial for first-degree murder and unlawful possession of a handgun, and the pool of potential jurors was so large that it exceeded the capacity of the courtroom. *Id.* at 1905-06. "As all of the seats in the courtroom were occupied by the venire panel, an officer of the court excluded from the courtroom any member of the public who was not a potential juror." *Id.* at 1906. Accordingly, when Weaver's mother and her minister sought entry to the courtroom "to observe the two days of jury selection, they were turned away." *Id.*

When she subsequently informed trial counsel that she had been excluded from the courtroom, he "did not discuss the matter" with Weaver, nor did he object, because he "believed that a courtroom closure for [jury selection] was constitutional."[5] *Id.* Weaver

---

[5] Weaver's trial, like Thaniel's, had taken place prior to the decision of the Supreme Court in *Presley v. Georgia*, 558 U.S. 209 (2010) (per curiam), which, in the words of the *Weaver* Court, "made it clear that the public-trial right extends to jury selection as well as to other portions of trial." *Weaver v. Massachusetts*, 582 U.S. __, 137 S. Ct. 1899, 1906 (2017). In fact, prior to the decision in *Presley*, "Massachusetts
(continued)

17

was thereafter convicted of both charges, the Commonwealth having presented "strong evidence of" his guilt, including a confession he had given to police. *Id.* The trial court imposed a sentence of life imprisonment for first-degree murder and an additional sentence for the handgun offense. *Id.*

Five years later, Weaver filed a motion for new trial,[6] raising, among other things, a claim that his trial counsel "had provided ineffective assistance by failing to object to the courtroom closure." *Id.* Following an evidentiary hearing, the Massachusetts trial court denied Weaver's motion, finding that, although trial counsel had performed deficiently, Weaver had failed to prove that he was thereby prejudiced. *Id.* On appeal, the Supreme Judicial Court of Massachusetts affirmed the trial court's denial of Weaver's new trial motion, holding that, although the closure of the courtroom during voir dire had been structural error, an ineffective assistance claim based upon an unpreserved structural error nonetheless required a showing of prejudice, which Weaver had failed to prove and, indeed, did not challenge on appeal. *Comm. v. Weaver*, 54 N.E.3d 495, 520-21 (Mass.

---

(continued)
courts would often close courtrooms to the public during jury selection, in particular during murder trials." *Id.*

[6] In Massachusetts, a motion for new trial functions similarly to a postconviction petition in Maryland. See Mass.R.Crim.P. 30(a) (providing that "[a]ny person who is imprisoned or whose liberty is restrained pursuant to a criminal conviction may at any time, as of right, file a written motion requesting the trial judge to release him or her or to correct the sentence then being served upon the ground that the confinement or restraint was imposed in violation of the Constitution or laws of the United States or of the Commonwealth of Massachusetts"); *id.* § (b) (providing that the "trial judge upon motion in writing may grant a new trial at any time if it appears that justice may not have been done").

2016) (citing *Comm. v. LaChance*, 17 N.E.3d 1101, 1104 (Mass. 2014)).[7] Weaver then petitioned the Supreme Court for certiorari to consider whether an ineffective assistance claim, based upon a procedurally defaulted structural error, requires a showing of prejudice, and the Court granted that petition. *Weaver v. Massachusetts*, 580 U.S. __, 137 S. Ct. 809 (2017).

The Supreme Court rendered a narrow decision, holding that, in the specific context "of trial counsel's failure to object to the closure of the courtroom during jury selection," *Weaver*, 137 S. Ct. at 1907, "*Strickland* prejudice is not shown automatically." *Id.* at 1911. "Instead," instructed the Court, "the burden is on the [petitioner] to show either a reasonable probability of a different outcome in his or her case or, as the Court has assumed for these purposes,[8] to show that the particular public-trial violation was so serious as to render his or her trial fundamentally unfair." *Id.* (internal citation omitted).

---

[7] In *Commonwealth v. LaChance*, 17 N.E.3d 1101 (Mass. 2014), the Supreme Judicial Court had held that, "where the defendant has procedurally waived his Sixth Amendment public trial claim by not raising it at trial, and later raises the claim as one of ineffective assistance of counsel in a collateral attack on his conviction, the defendant is required to show prejudice from counsel's inadequate performance (that is, a substantial risk of a miscarriage of justice) and the presumption of prejudice that would otherwise apply to a preserved claim of structural error does not apply." *Id.* at 1104 (citations omitted).

[8] Weaver maintained that, because the *Strickland* Court instructed that "the ultimate focus of inquiry must be on the fundamental fairness of the proceeding whose result is being challenged," *Strickland v. Washington*, 466 U.S. 668, 696 (1984), it follows that, under "a proper interpretation of *Strickland*, even if there is no showing of a reasonable probability of a different outcome, relief still must be granted if the convicted person shows that attorney errors rendered the trial fundamentally unfair." *Weaver*, 137 S. Ct. at 1911. The *Weaver* Court therefore assumed without deciding that *Strickland* prejudice could be established either by showing that, but for trial counsel's deficient

(continued)

The Supreme Court observed that Weaver had "offered no evidence or legal argument establishing prejudice in the sense of a reasonable probability of a different outcome but for counsel's failure to object." *Id.* at 1912-13. As for whether the closure of the courtroom during voir dire had rendered Weaver's trial "fundamentally unfair," the Court noted that "the courtroom [had] remained open during the evidentiary phase of the trial," that the decision to close the courtroom had been "made by court officers rather than the judge," that "there were many members of the venire who did not become jurors" but had observed the proceedings, and that the record had indicated no "basis for concern, other than the closure itself." *Id.* at 1913. Moreover, observed the Court, Weaver had failed to show "that the potential harms flowing from a courtroom closure," such as juror misconduct during voir dire or "misbehavior by the prosecutor, judge, or any other party," had "[come] to pass." *Id.* Therefore, the Court concluded, the violation had not "pervade[d] the whole trial or [led] to basic unfairness," and Weaver had failed to show that trial counsel's deficient performance had resulted in a fundamentally unfair trial. *Id.* The Court thus affirmed the judgment of the Supreme Judicial Court, denying Weaver's ineffective assistance claim. *Id.* at 1913-14.

The instant case is practically on all fours with *Weaver*. The only significant difference between the two cases is that here, unlike in *Weaver*, there was not even deficient attorney performance, which, in that case, the lower court had found, based

---

(continued)

performance, there was a reasonable probability of a different outcome, *or* that trial counsel's deficient performance rendered the trial fundamentally unfair. *Id.*

20

upon trial counsel's "serious incompetency, inefficiency, or inattention," *id.* at 1907 (citations and quotations omitted), a finding that was not contested before the Supreme Court. In contrast with *Weaver*, where trial counsel had acquiesced in the courtroom closure because of ignorance of the law, in the instant case, the trial judge and trial counsel had affirmatively agreed to the courtroom closure under circumstances suggesting that trial counsel had a tactical reason for doing so. There was evidence in the record that the reason trial counsel had agreed to the closure was, at least in part, his desire to avoid a possible outbreak of violence between spectators sympathetic to his client and spectators sympathetic to the victim.[9] That distinction further weakens Thaniel's case in comparison with *Weaver*. *See*, *e.g.*, *Oken v. State*, 343 Md. 256, 283 (1996) (observing that a postconviction petitioner must "overcome the presumption that the challenged action might, under the circumstances, be considered sound trial strategy"), *cert. denied*, 519 U.S. 1079 (1997); *Robinson v. State*, 410 Md. 91, 104, 111 (2009) (declining to apply plain error review to unpreserved claim of public trial violation "under circumstances suggesting that the lack of objection might have been strategic, rather than inadvertent"). Thaniel has failed to rebut the presumption that trial counsel had agreed to the courtroom closure as a matter of trial strategy. We hold that trial counsel did not render deficient performance, given the evidence (which was later confirmed when the verdict was taken) that he sought to avoid an in-court confrontation between the families of his client and that of the murder victim.

---

[9] The postconviction court noted that the record "indicates concern about potential friction during trial between the families of the victim and the defendant."

21

In any event, Thaniel, like Weaver, has presented no evidence that, but for the decision of trial counsel to agree to the closure of the courtroom during voir dire, there is a reasonable probability that the outcome of his trial would have been different, nor has he presented any evidence that that decision rendered his trial fundamentally unfair. Indeed, it appears that the postconviction court treated this claim as if it had been a preserved claim of structural error in a direct appeal. Thaniel's claim was, in fact, nothing of the sort, and his total inability to show *Strickland* prejudice bars relief on this claim.

In passing, we note that Thaniel raises several arguments in support of the postconviction court's ruling, but none of them has any merit. Thaniel claims that he raised, in the postconviction court, a freestanding claim that the trial court's structural error in closing the courtroom during voir dire had violated his right to a public trial and that we should affirm the postconviction court's grant of relief on that ground. But he ignores that trial counsel had affirmatively waived that freestanding claim of structural error by agreeing to the closure of the courtroom, as the postconviction court correctly recognized.[10] *See Curtis v. State*, 284 Md. 132, 147 (1978) (observing that a "defendant may forego a broad spectrum of rights [indeed, all rights that do not require a knowing and voluntary waiver] which are deemed to fall within the category of tactical decisions by counsel or involve procedural defaults"); *accord State v. Rose*, 345 Md. 238, 248-50

---

[10] Thaniel concedes that the right to a public trial is not one of the fundamental rights that requires a knowing and voluntary waiver by the defendant. *Robinson v. State*, 410 Md. 91, 107 (2009).

(1997) (holding that a claim of a defective reasonable doubt jury instruction, an alleged structural error, had been waived through a procedural default). Thus, Thaniel's reliance upon cases such as *Presley v. Georgia*, 558 U.S. 209 (2010) (per curiam), *Longus v. State*, 416 Md. 433 (2010), and *Walker v. State*, 125 Md. App. 48 (1999), is misplaced because those cases were direct appeals where the error had been preserved. *See Presley*, 558 U.S. at 210-11; *Longus*, 416 Md. at 440-41 & n.3; *Walker*, 125 Md. App. at 62.

Nor is Thaniel correct in contending that *Weaver* should not be applied retroactively to this case. *Weaver* did not announce a fundamental change in the law but merely applied existing precedent (i.e., *Strickland*) to a previously unexamined circumstance, and, as such, is fully applicable to the instant case. *See State v. Daughtry*, 419 Md. 35, 77-78 (2011) (explaining that, where a judicial decision "sets forth and applies the rule of law that existed both before and after the date of the decision," the decision "applies retroactively in the same manner as most court decisions") (citations and quotations omitted).

We also reject Thaniel's contention that the closure of the courtroom during voir dire rendered his trial fundamentally unfair. There is no evidence whatsoever that any specific juror would have been stricken had Thaniel's family and friends been allowed in the courtroom during voir dire. As in *Weaver*, "the courtroom remained open during the evidentiary phase of the trial," there were, presumably, "many members of the venire who did not become jurors" but had observed the proceedings, and the record indicates no "basis for concern, other than the closure itself." *Id.* at 1913. As in *Weaver*, Thaniel has failed to show "that the potential harms flowing from a courtroom closure," such as

23

juror misconduct during voir dire or "misbehavior by the prosecutor, judge, or any other party," had "[come] to pass," and we similarly conclude that the public trial violation did not "pervade the whole trial or lead to basic unfairness." *Id.* The purported prejudice he alleges that he suffered is purely speculative and provides no basis for vacating his convictions.

***Whether the postconviction court erred in finding trial counsel ineffective for failing to object when the trial court and counsel addressed a juror's note in Thaniel's absence***

The State challenges the postconviction court's conclusion that Thaniel's trial counsel was ineffective in failing to object when the trial court, in the presence of counsel for both parties, addressed a juror's note in Thaniel's absence. According to the State, the note on which the postconviction court granted relief, note 3, did not pertain to the action; trial counsel properly waived Thaniel's right to be present, under Rule 4-326(d); and, in any event, Thaniel failed to demonstrate prejudice. As for the latter two contentions, we agree.[11]

The postconviction court failed, in its analysis, to account for Rule 4-231(c), which, at the time of trial, provided:

> (c) **Waiver of right to be present.** The right to be present under section (b) of this Rule is waived by a defendant:
>
> > (1) who is voluntarily absent after the proceeding has commenced, whether or not informed by the court of the right to remain; or

---

[11] We need not decide whether the juror note, requesting that the jury be discharged prior to the spectators being permitted to leave the courtroom, pertained to the action.

24

(2) who engages in conduct that justifies exclusion from the courtroom; or

(3) who, personally or through counsel, agrees to or acquiesces in being absent.

Clearly, trial counsel acquiesced in Thaniel's absence, as contemplated by the rule. Thaniel's presence, under those circumstances, was not subject to a knowing and voluntary waiver, as the postconviction court seemed to assume. The postconviction court failed to address the possibility that trial counsel's waiver of Thaniel's presence fell within "the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690.

Moreover, the postconviction court concluded that "it cannot say that the State has met its burden of showing, beyond a reasonable doubt, that the violation was harmless." In other words, the postconviction court applied the wrong legal standard in assessing prejudice. Under the correct standard, Thaniel, not the State, bore the burden to show that, but for trial counsel's alleged error in failing to object to Thaniel's absence from the bench conference, there was a reasonable probability that the result of the trial would have been different. *Strickland*, 466 U.S. at 694. Thaniel, however, utterly failed to demonstrate any prejudice accruing from his absence from the bench conference where the note was addressed.

Thaniel, nonetheless, insists that his fundamental right to be present was violated because his trial counsel failed to notify him of the juror notes and thereby thwarted his ability to be present when the court determined its course of action in response to those

25

notes.  As the State points out, however, the cases upon which he relies, such as *Denicolis v. State*, 378 Md. 646 (2003); *Winder v. State*, 362 Md. 275 (2001); and *Stewart v. State*, 334 Md. 213 (1994), all were direct appeals where neither trial counsel nor the defendants had been notified of the juror notes at issue, and those cases therefore shed no light upon Thaniel's postconviction claim.  Whereas those cases involved application of the harmless error standard of *Dorsey v. State*, 276 Md. 638, 659 (1976), to circumstances where no one on the defense side had been notified of the juror notes, the instant case involves the application of an entirely different and more difficult standard, the "reasonable probability" standard of *Strickland*, to a circumstance where trial counsel had been fully informed of the notes and had waived Thaniel's presence.  As we explained in *Patterson v. State*, 229 Md. App. 630, 638-39 (2016), there is a "stark contrast" between the harmless error standard and the "substantial possibility" standard applicable in an actual innocence proceeding, the latter of which is, as the Court of Appeals has explicated, substantively identical to the *Strickland* prejudice standard.  *See Bowers v. State*, 320 Md. 416, 426-27 (1990).  Thaniel has not even attempted to meet his burden to show that, but for trial counsel's purported error, there is a reasonable probability that the result of his trial would have been different.

**INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL**

There is a fundamental difference between the right to effective assistance of appellate counsel and the right to effective assistance of trial counsel—whereas the latter is a trial right, derived from the Sixth Amendment, *Strickland*, 466 U.S. at 684-86, the former derives from an amalgamation of the Due Process and Equal Protection Clauses

26

of the Fourteenth Amendment.[12]  *Halbert v. Michigan*, 545 U.S. 605, 616-17 (2005) (observing that the right to appellate counsel is grounded in the Fourteenth Amendment); *Smith v. Robbins*, 528 U.S. 259, 276 (2000) (observing that the right to appellate counsel derives in part from the Equal Protection Clause and in part from the Due Process Clause).  Nonetheless, that doctrinal distinction is of little practical significance, because a claim of either type of ineffective assistance of counsel is resolved under the same framework—the two-prong test of *Strickland*.  *See Robbins*, 528 U.S. at 285 (observing that "the proper standard for evaluating" a claim that "appellate counsel was ineffective in neglecting to file a merits brief is that enunciated in" *Strickland*) (citing *Smith v. Murray*, 477 U.S. 527, 535-36 (1986)); *Gross v. State*, 371 Md. 334, 349 (2002), noting that, "the same standards apply in assessing appellate counsel effectiveness" in either trial or appellate context) (citations omitted).

In applying the *Strickland* test to a claim of ineffective assistance of appellate counsel, a reviewing court, assessing the performance prong, must keep in mind that counsel is not required "to argue every possible issue on appeal." *Newton v. State*, 455 Md. 341, 363 (2017) (quoting *Gross*, 371 Md. at 350).  Thus, appellate counsel "need not (and should not) raise every nonfrivolous claim, but rather may select from among them

---

[12] The Supreme Court has iterated that "[t]he Federal Constitution imposes on the States no obligation to provide appellate review of criminal convictions." *Halbert v. Michigan*, 545 U.S. 605, 610 (2005) (citing *McKane v. Durston*, 153 U.S. 684, 687 (1894)).  If a state *does* provide such review, however, it "may not 'bolt the door to equal justice' to indigent defendants." *Id.* (quoting *Griffin v. Illinois*, 351 U.S. 12, 24 (1956) (Frankfurter, J., concurring in judgment)).

in order to maximize the likelihood of success on appeal." *Id.* (quoting *Robbins*, 528 U.S. at 288).

"To satisfy the prejudice prong, the [petitioner] must establish to a reasonable probability that but for his counsel's failure to raise an issue, he would have prevailed on his appeal." *Id.* (citing *Robbins*, 528 U.S. at 286). As applicable to an ineffective assistance claim based upon the failure to raise an unpreserved issue, a petitioner would have prevailed on appeal only if the appellate court would have found plain error. *Id.* at 364.

### Whether the postconviction court erred in finding appellate counsel ineffective for failing to raise an unpreserved claim in Thaniel's direct appeal

The State challenges the postconviction court's conclusion that Thaniel's appellate counsel was ineffective for failing to raise, in Thaniel's direct appeal, the unpreserved claim that the trial court had erred in addressing juror note 3 in Thaniel's absence. According to the State, the postconviction court "did not appear to appreciate that this claim was unpreserved" and that it could have been considered on appeal "only in the unlikely event that this Court [had] exercised its discretion to review for plain error." Given the unlikelihood that we would have done so, the State maintains that Thaniel failed to rebut the presumption that appellate counsel acted reasonably in declining to raise this issue. We agree.

A recent decision of the Court of Appeals, *Newton v. State*, 455 Md. 341, is instructive. In *Newton*, the Court of Appeals considered the question before us—whether appellate counsel could *ever* render ineffective assistance in failing to raise an

unpreserved issue—but it did not give a definitive answer. The *Newton* Court did, however, observe that it is "'rare' for the Court to find plain error," *id.* (quoting *Yates v. State*, 429 Md. 112, 131 (2012)), and cited examples in which it had done so, covering such matters as "serious errors" in jury instructions and a biased trial judge. *Id.* at 364-65 (citing cases). To that short list we could add a recent decision in our Court, *Hallowell v. State*, 235 Md. App. 484 (2018), in which we found plain error in giving a pattern jury instruction, but only because of an intervening change in the law. *Id.* at 504-06.[13] Because the error underlying Newton's ineffective assistance claim, the presence of an alternate juror during the deliberations, did not affect the defendant's substantial rights and would not have been deemed plain error on appeal, the Court concluded that Newton could not satisfy the prejudice prong of *Strickland*. *Newton*, 455 Md. at 366.

*Newton* is dispositive of Thaniel's claim of ineffective assistance of appellate counsel. Thaniel has utterly failed to show, or even suggest that, had appellate counsel raised this unpreserved issue, there was a reasonable probability that this Court would have granted plain error review. Indeed, given that trial counsel's waiver of Thaniel's presence was permitted under Rule 4-231(c), we hold that there was no error at all, let alone plain error.

---

[13] See also *Unger v. State*, 427 Md. 383 (2012), which held that trial counsel's failure to object to advisory jury instructions, during a trial held prior to an intervening change in the law which rendered such instructions unconstitutional, *id.* at 417, "did not amount to deficient representation" under the *Strickland* performance prong. *Id.* at 411.

*Cumulative Effect of Purported Errors*

Having concluded that the postconviction court erred in granting relief as to all of Thaniel's claims, except those pertaining to modification of sentence and sentence review, we further hold that the postconviction court erred in finding prejudice accruing from the cumulative effect of trial counsel's purported errors.

> **JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY VACATED. CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO GRANT APPELLEE THE RIGHT TO FILE BELATED MOTIONS FOR MODIFICATION OF SENTENCE AND FOR SENTENCE REVIEW BY A THREE-JUDGE PANEL. COSTS ASSESSED TO APPELLEE.**